**UNIFIED INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1441C.**

United States Claims Court.

Dec. 2, 1991.

Thomas A. Trimboli, Springfield, Va., for plaintiff; R. Michael LaBelle, Powers & Lewis, Washington, D.C., of counsel.

Anthony J. Ciccone, Washington, D.C., with whom were David M. Cohen, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civil Div., for defendant; Peter D. Butt and Geoffrey D. Chun, U.S. Navy, of counsel.

## OPINION

SMITH, Chief Judge.

On September 27, 1991, defendant moved to dismiss Counts II to IV of plaintiff's complaint.[1] After careful consideration of the jurisdictional issues raised by defendant's motion, the court grants the motion as it applies to Count III of the complaint, grants in part and denies in part the motion as it applies to Count IV, and denies the motion as it applies to Count II as amended pursuant to the court's order of November 14, 1991.

## FACTS

This case involves a procurement undertaken by the Navy for the management of the Source Data System (SDS). SDS is the automatic data processing pay system for members of the Navy stationed within the continental United States. The SDS program began in 1978, when the initial SDS contract was awarded to RGI, Inc. (RGI).

In February 1989, the Navy issued a solicitation for a follow-on to the SDS contract. Plaintiff submitted a proposal for the SDS follow-on along with four other contractors, including RGI. The Navy determined that only plaintiff and RGI were in the competitive range and technically capable of performing the contract. On November 15, 1989, the Navy awarded the follow-on contract to RGI. On November 22, plaintiff protested the award before the General Accounting Office (GAO). On April 2, 1990, the GAO issued a decision sustaining the protest and recommending remedial action.

During the GAO's disposition of the plaintiff's first bid protest, the Navy stayed performance of RGI's protested award and extended RGI's performance period under its existing contract. Plaintiff then filed another protest before the GAO challenging those extensions as improper sole-source awards of bridge contracts to RGI. On December 19, 1990, the GAO rejected this protest, finding the Navy's actions reasonable under the circumstances.

On January 9, 1991, the Contracting Officer (CO) disqualified plaintiff from further competition for the follow-on SDS contract because plaintiff had acquired access to computer diskettes containing proprietary information of RGI, thereby gaining unfair competitive advantage. Plaintiff admits having this information, which allegedly showed that RGI employees were paid wages below that required by federal law. Plaintiff voluntarily conveyed this information to the government prior to its disqualification, presumably in an unsuccessful attempt to discredit RGI.

In accordance with the GAO's ruling in the first bid protest, the Navy resolicited proposals for award of the SDS follow-on contract. On April 1, 1991, the Navy also issued RGI a further extension of its existing SDS contract. The April 1 option is significant for the court's consideration of the government's motion because it contained a clause affording the government a six month extension option beyond that

---

1. In Count I of the complaint, plaintiff seeks judgment against the Navy for proposal preparation costs of $100,000.00, bid protest costs of $75,542.52, and consequential damages of $25,-000.00. The government has not challenged this court's jurisdiction over Count I.

originally provided for in the original SDS contract.

On July 10, 1991, the Navy awarded the follow-on SDS contract to Computer Data Systems, Inc. (CDSI). On July 19, 1991, RGI protested that award before the General Services Board of Contract Appeals (GSBCA). In a July 31, 1991 order, following a suspension hearing, the GSBCA suspended performance of the contract awarded to CDSI, pursuant to the Brooks Act, pending a decision on RGI's protest. The Board suspended performance of the new SDS contract with CDSI because RGI had an existing contract under which needed pay and personnel services could continue to be provided in the interim. Plaintiff filed its complaint and its motion for a preliminary injunction in this court on September 19, 1991. The court held a status conference on September 24, 1991 to determine the urgency of the relief sought by plaintiff. At that conference, the government raised the issue whether this court had jurisdiction over plaintiff's motion for a preliminary injunction. On September 27, 1991, defendant filed a motion to dismiss Counts II to IV of plaintiff's complaint.

On October 1, 1991, the GSBCA issued a decision granting RGI's protest. The Board found that the Navy failed to treat RGI and CDSI equally both in evaluating the two offerors' proposals and during procurement discussions. The Board ordered the Navy to (1) reevaluate the offerors' technical proposals in a consistent fashion and (2) to reopen discussions with RGI and CDSI. Finally, the Board reinstituted the Navy's procurement authority which, as noted above, had been suspended during the pendency of the protest.

## DISCUSSION

I. Plaintiff's motion for a preliminary injunction

Plaintiff seeks equitable relief in Counts II to IV of its complaint:

*Count II* seeks a declaration that CDSI is not a responsible source for the award of the contract and seeks to enjoin the Navy from issuing any notice or authority to CDSI that would direct or allow it to enter into performance under the contract it was awarded on July 10, 1991;

*Count III* seeks declaratory judgment that the award of sole source bridge contracts to RGI violates 10 U.S.C. Chapter 137 and asks the court to enjoin all future bridge contracts and to terminate any present bridge contract within fourteen days of the court's order;

*Count IV* seeks a declaration that plaintiff was the only responsible source in the competitive range and requests an injunction mandating the Navy award the contract to plaintiff or, alternatively, enter into negotiations only with plaintiff for the award of the contract.

Oral argument on defendant's motion to dismiss took place on November 13, 1991. After the argument, the court issued an order dated November 14, 1991, granting plaintiff leave to amend its complaint to reassert Counts II and IV. Plaintiff so amended its complaint on November 22, 1991. The following opinion sets forth the oral ruling given the parties on November 20, 1991.

II. Defendant's motion to dismiss for lack of jurisdiction

A. *Count II*

In its motion, defendant argues that because the complaint was filed after the award of the Source Data Systems (SDS) contracts at issue—(1) the original contract, and extensions to that contract, awarded to RGI and (2) the follow-on contract awarded to CDSI—the court lacks subject matter jurisdiction to grant the injunctive relief plaintiff seeks in Count II.[2] Defendant bases its Count II dismissal argument on the Tucker Act, which defines this court's equitable jurisdiction:

To afford complete relief on any contract claim *brought before the contract is awarded,* the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordi-

2. The original SDS contract was awarded to RGI in 1978. The follow-on contract was awarded to CDSI on July 10, 1991. Plaintiff filed its complaint September 19, 1991.

nary relief as it deems proper, including but not limited to injunctive relief.

28 U.S.C. § 1491(a)(3) (Supp.1991) (emphasis added). Defendant argues that because plaintiff filed its complaint after the award of the two contracts at issue, the Tucker Act precludes this court from granting the equitable relief plaintiff seeks.

The court agrees with defendant that the Tucker Act precluded this court from having jurisdiction over Count II *before* the GSBCA rendered its decision on RGI's bid protest. The court finds that the GSBCA's suspension of CDSI's performance on the follow-on did not affect the status of the contract award. In fact, in its July 31, 1991 interim suspension order, the GSBCA did not terminate or cancel the award of the follow-on contract to CDSI. Rather, the GSBCA order preserved the *status quo* pending the outcome of RGI's protest.

This conclusion is borne out by a reading of 40 U.S.C. § 759(f), which controls the bid dispute resolution process as it applies to contracts for automated data processing services. Section 759(f)(3)(A), which the GSBCA cited as the basis for its interim order, covers situations where "the board receives notice of a protest ... *after the contract has been awarded*" (emphasis added). In these situations, the board "shall suspend the procurement authority" of the applicable agency, but only "to acquire any goods or services under the contract which are not previously delivered and accepted." 40 U.S.C. § 759(f)(3)(B) (Supp.1991). After contract award, procurement authority is thus suspended only in regard to performance on the contract. By contrast, § 759(f)(2)(A) covers situations where "a protest ... is filed *before the award of a contract*" (emphasis added). In these instances, the statute broadly mandates that the board "shall suspend the procurement authority" of the agency. 40 U.S.C. § 759(f)(2)(B). This latter section of the statute was not, and could not have been, implicated here as RGI's protest was filed after the award of the follow-on contract to CDSI.

Once the GSBCA issued its decision, however, it was possible for the court to possess its conventional pre-award jurisdiction over Count II. As of October 1, 1991, the date of the GSBCA decision, the follow-on contract was no longer awarded to CDSI. While defendant asserts that the contract still exists in some ethereal realm, hovering between concrete binding instrument and contingent future interest, the court must disagree. The practical reality is that CDSI had a legally binding promise from the government prior to the GSBCA's October 1, 1991 decision. After that decision all CDSI was left with was a mere hope, as was RGI. Neither would-be contractor had a right to any of the promises flowing from the Navy under the pre-protest contract awarded by the Navy to CDSI. In such a situation it would be to create a legal fiction to find a contract existing between CDSI and the Navy. Plaintiff was therefore free to reassert Count II any time before the Navy reawarded the follow-on contract. Thus, plaintiff needed only to timely file an amended complaint reasserting Count II to confer jurisdiction on this court. The plaintiff has done this.

In denying defendant's motion as it applies to Count II, the court notes that it is legally insignificant for the purposes of considering this motion whether the follow-on contract awarded to CDSI was determined by the GSBCA to be void *ab initio*. *See United States v. Amdahl Corp.*, 786 F.2d 387, 392–94 (the significance of whether a contract is void *ab initio* or merely voidable after a board upholds a bid protest is largely in determining a contractor's entitlement to termination for convenience damages). Even if the GSBCA did not render the July 10, 1991 award void *ab initio*, as defendant argues, the follow-on nonetheless became an unawarded contract after the GSBCA's October 1, 1991 decision. In revising the Navy's delegation of procurement authority, the GSBCA effectively terminated the award of the follow-on contract to CDSI.[3] Plaintiff was there-

---

**3.** Defendant's arguments to the contrary misconstrue the effect of the GSBCA's decision.

Defendant contends that because the GSBCA merely revised, rather than revoked, the Navy's

fore free to reassert its claims for equitable relief in this court after the GSBCA decision.

Similarly, it is immaterial whether CDSI can maintain a claim for termination for convenience damages after the GSBCA decision. Such damages would relate to benefits conferred by CDSI upon the Navy, if any, between the time of the July 10, 1991 award and the time of contract termination, or October 1, 1991, the date the GSBCA upheld RGI's protest. *See Amdahl,* 786 F.2d at 394 (a contractor can only recover termination for convenience damages where a benefit is conferred on the government). The fact that CDSI may possess a right to damages after the GSBCA decision does not support defendant's argument. In fact, it reinforces the plaintiff's point that the contract no longer exists.

The court thus denies defendant's motion as it applies to Count II. As plaintiff has filed an amended complaint before the Navy re-awarded the follow-on contract, this court will consider Count II on the merits.

### B. *Count III*

■ Defendant argues that this court lacks subject matter jurisdiction over Count III because the alleged bridge contracts are in fact extensions of the original SDS contract awarded to RGI in 1978. Defendant contends that the Tucker Act precludes this court having jurisdiction over plaintiff's Count III claim because such extensions are actually part of a contract that was awarded (to RGI) before plaintiff filed its original complaint.

Based on well-established contract principles, plaintiff is precluded from seeking relief in this court to enjoin the award of past and future extensions to the original SDS contract. Pertinent case law holds that options are considered new contracts only "where the exclusive, or at least the primary, purpose of the original contract was to obtain the option." *International Business Invs., Inc. v. United States,* 21 Cl.Ct. 79, 80 (1990); *see also Ocean Technology, Inc. v. United States,* 19 Cl.Ct. 288, 291–92 (1990) ("if the option never constitutes the chief object of desire for which the contract was negotiated, the option is not a second contract"). Where, as here, the option was not the exclusive purpose of the original contract, the option "should be treated as a continuation of the original contract," *International Business Invs.,* 21 Cl.Ct. at 80, for it is "merely incidental to, and is not separable from, the

delegated authority, its decision "did not require the Navy to terminate or void the contract awarded to CDSI, because, upon reevaluation, the Navy may well determine that the award to CDSI is in the Government's best interest. Only if a contrary finding is made, after reevaluation, might the Navy need to terminate the contract awarded to CDSI." Defendant's Reply Brief at 10–11, filed October 25, 1991. Defendant thus hinges its contention on the GSBCA's use of the word "revise," rather than "revoke," in upholding RGI's protest. The statute at issue here, 40 U.S.C. § 759, grants the GSBCA the authority to "suspend, revoke, or revise the procurement authority" of the agency whose procurement is being protested. 40 U.S.C. § 759(f)(5)(B) (Supp. 1991). The court, however, does not ascribe as much significance as defendant does to the GSBCA's choice of terms. Prior bid protest decisions rendered by the GSBCA clearly indicate that the GSBCA has the authority, in remedially revising an agency's procurement authority, to terminate a previously awarded contract. *See, e.g., Centel Federal Systems, Inc.,* 91–2 BCA ¶ 24,028 (board terminated the awarded contract for the convenience of the government and "revised" the agency's procurement authority to permit changes to the solicitation's requirements); *PacifiCorp Capital, Inc.,* 90–3 BCA ¶ 23,-267 (agency's admission that the protester was responsive enabled the board to "revise[ ] the agency's procurement authority ... to terminate the existing contract" and proceed with the procurement).

Further, the bid protest decision that defendant cites in support of its position, *Rocky Mountain Trading Co.,* 91–1 BCA ¶ 23,619, *reconsid. denied,* 91–2 BCA ¶ 23,679, is inapposite here. In *Rocky Mountain,* the GSBCA revised the agency's procurement authority to require it to make a responsibility determination with respect to the protester. The agency was to terminate the contract only if it found the protester responsible. Here, by contrast, both RGI, the protester, and CDSI, the awardee, were determined to be responsible and competitive before the award of the follow-on to CDSI, a determination unchallenged by the board. Thus, there was no reason for the board to provide for conditional termination of the contract. Only in a situation where, as in *Rocky Mountain,* the availability of another responsible contractor is in question, would a board make the termination of the protested contract conditional.

original contract," *Ocean Technology,* 19 Cl.Ct. at 292. Thus the equitable relief sought in Count III is precluded by the Tucker Act.

Plaintiff argues, however, that the extensions were illegally entered into and thus cannot be barred from this court's consideration by the Tucker Act. The court finds plaintiff's argument unconvincing. In regard to Modifications P00001 through P00003, which extended performance on the original SDS contract from April 1 through July 31, 1991, the court can find no basis for plaintiff's contention that the Navy violated the justification and approval process required for such extensions by 10 U.S.C. §§ 2304(c) and (f) (Supp.1991). Defendant has produced the required justifications and approvals for these modifications and they appear to comply with the relevant provisions of 10 U.S.C. § 2304. *See* Defendant's Reply Brief, Exhibits 9, 11 and 12, filed October 25, 1991.

In regard to the H3 option clause, which can potentially extend RGI's performance through January 31, 1992, the court can again find no basis to support plaintiff's contention that the Navy violated applicable Federal Acquisition Regulations (FAR). Although plaintiff correctly noted at oral argument that FAR Subpart 17.200 sets forth a general rule that options such as the H3 clause are not to be applied to contracts for automated data processing services, plaintiff mischaracterized the scope of that general rule. That same subpart also indicates that it "does not preclude the use of options in [such] contracts." In fact, agencies such as the Navy are permitted to include options extending services on existing contracts "when the inclusion of an option is appropriate." 48 C.F.R. § 17.208(f). Use of an option is appropriate when, as here, "[a]ward of [a] contract[ ] for recurring and continuing service requirements [is] ... delayed due to circumstances beyond the control of [the] contracting office[ ]. Examples of circumstances causing such [a] delay[ ] are *bid protests* and alleged mistakes in bid" 48 C.F.R. § 37.111 (emphasis added). Using options to extend service on an existing contract is deemed inappro-

priate only if certain conditions specified in FAR Subpart 17.202 exist, none of which do here.

For the foregoing reasons, the court grants defendant's motion as it applies to Count III.

### C. *Count IV*

The government challenges count IV as a request for specific performance. The government contends that granting this count would require the court to redirect the follow-on SDS contract from CDSI to plaintiff. The government argues that the *Scanwell* doctrine precludes this court from entertaining such requests for specific performance.

██ The *Scanwell* doctrine denies federal district courts the jurisdiction to compel the government to award a specific contract to a particular bidder. In *Scanwell,* the Court of Appeals for the District of Columbia Circuit held that "[i]t is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties." *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970). The *Scanwell* doctrine has been held to apply to the Claims Court by well-established precedent. *See Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 711 (1985). Clearly, then, this court cannot require the Navy to award the follow-on contract to plaintiff.

██ However, to the extent that plaintiff in count IV impliedly seeks to force the Navy to consider plaintiff for the follow-on contract, this court possesses jurisdiction over plaintiff's request for injunctive relief. Because the GSBCA granted RGI's protest and the Navy has yet to award the follow-on contract, this court may find that plaintiff has cause to be included with RGI and CDSI for consideration of the follow-on. *See CACI, Inc.–Federal v. United States,* 719 F.2d 1567, 1575 (Fed.Cir.1983) (holding that this court may issue an order barring the award of a contract and requiring the government to repeat the bidding process

under circumstances that would eliminate the alleged taint).

Based on its reading of Count IV, the court grants the government's motion in part, and denies it in part. As plaintiff has filed an amended complaint before the Navy re-awarded the follow-on contract, the court will consider Count IV on the merits. The court, however, will only consider this count to the extent it requests this court to overturn the Contracting Officer's disqualification of plaintiff from consideration on the follow-on contract.

IT IS SO ORDERED.