IMS SERVICES, INC., Plaintiff,

v.

UNITED STATES, Defendant,

SRS Technologies, Intervenor.

No. 94–776C.

United States Court of Federal Claims.

Dec. 12, 1994.

Keith L. Baker, Eckert Seamans Cherin & Mellot, Washington, DC, attorney of record for plaintiff. Sean Morgan, of counsel.

G. Scott Williams, Commercial Litigation Branch, Civil Div., Dept. of Justice, with whom were David M. Cohen, Director, and Frank W. Hunger, Asst. Atty. Gen., attorneys of record for the defendant. Robert Jusko, Dept. of the Navy, of counsel.

Lynda Troutman O'Sullivan, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, attorney for intervenor SRS Technologies.

## OPINION

HORN, Judge.

This case comes before the court on defendant's motion to dismiss plaintiff's complaint for declaratory and injunctive relief. After careful consideration of the documents submitted by the parties and the arguments presented by counsel orally, and as is discussed more fully below, the court finds that it has jurisdiction to entertain plaintiff's claim. This opinion confirms and reduces to writing the oral ruling issued by the court from the bench on November 9, 1994.

### Procedural History

Immediately upon receipt of plaintiff's complaint and request for injunctive relief, filed on October 26, 1994, this court scheduled a status conference to determine the urgency of the case and to schedule future proceedings. At the initial status conference on October 27, 1994, government counsel indicated that as a result of a decision issued by the General Accounting Office (GAO) on September 14, 1994, the government intended to amend Solicitation No. N68936–93–R–0172 in order to conduct a new round of best & final offers (BAFOs). At the status conference, the government also represented that a new contract would not be awarded prior to January 15, 1995. As a result, the plaintiff indicated that it would not press its request for a temporary restraining order (TRO). In a document, filed on October 28, 1994, titled "STIPULATION OF POSTPONEMENT IN AWARD OF NEW CONTRACT," the defendant further confirmed its commitment that it would not award a new contract prior to January 15, 1995. Defendant states in the document:

> Pursuant to this Court's Order at the status conference on October 27, 1994, the United States hereby submits its stipulation that the Department of the Navy will not award a new contract pursuant to Request for Proposals No. N68936–93–R–0172 prior to January 15, 1995.

At the request of the parties, also on October 28, 1994, the court entered a protective order covering all pleadings and other materials submitted to the court in the above-captioned case ordering protection from public disclosure under the conditions specified in the order. For the purposes of the above-captioned case, protected information was defined as "the prices offered by the offerors under Solicitation No. N68936–93–R–0172, and the identity of the offerors' subcontractors."

On November 4, 1994, the government filed the instant motion to dismiss, for lack of jurisdiction, pursuant to Rule 12(b)(1) of the

Rules of the United States Court of Federal Claims (RCFC). On November 4, 1994, SRS Technologies (SRS), a disappointed bidder who earlier had filed a successful protest with the GAO, submitted a motion for leave in this court to file a brief in support of defendant's motion to dismiss. At the oral argument, the court granted the SRS motion to file the brief.

Subsequently, on November 23, 1994, this court granted a motion filed by SRS on November 15, 1994, to intervene formally in this action. Although counsel for SRS did not argue at the original conference on October 27, 1994, or at the oral argument on November 9, 1994, counsel for SRS was present and did respond to questions posed by the court. As a condition for permission to intervene, SRS agreed to be bound by all prior rulings and orders of this court in the above-captioned case, including the protective order entered by the court on October 28, 1994.

On November 2, 1994, the government filed a document titled "NOTICE REGARDING SCHEDULE FOR CONTRACT AWARD." Because of the relevance of this document to the issues of jurisdiction raised in defendant's motion to dismiss, it is quoted in full below:

### NOTICE REGARDING SCHEDULE FOR CONTRACT AWARD

Pursuant to this Court's instructions at the status conference on October 27, 1994, the United States, on behalf of the Department of Navy ("Navy"), hereby advises this Court of the Navy's intended schedule regarding the selection of the bidder to be awarded the contract disputed in this litigation. The Navy's tentative schedule is attached as Exhibit 1 and estimates that the prospective awardee can be selected between December 22, 1994, and January 12, 1995. At the October 27 status conference this Court was advised by undersigned counsel that the Navy estimated that selection of the prospective awardee would take only 2–3 weeks, rather than potentially 2½ months as shown in the schedule. After further consultation with procurement specialists, the Navy has concluded that its initial estimate was unrealistic given certain activities and time periods, required by the FAR and judged necessary or prudent by the Navy, which must occur prior to the selection of the prospective awardee. Exhibit A includes a brief discussion of these activities and time periods.

The Navy must emphasize that this schedule is tentative and is subject to change. The Navy understands, however, that all parties involved in this dispute, including this Court, would be well served by as short a schedule as possible, and will strive to select the prospective awardee as quickly as possible.

There is no dispute that this court has jurisdiction to review requests for injunctive relief in pre-award cases, pursuant to 28 U.S.C. § 1491(a)(3) (Supp.1991). Defendant, however, asserts that this court lacks jurisdiction to entertain the instant claim filed by IMS because the government, by issuing the May 2, 1994 award/contract document, already has awarded the contract at issue to the plaintiff.

Plaintiff acknowledges that this court does not have jurisdiction to award equitable relief on contracts which already have been award-

ed. In the instant action, however, in which no order to proceed has been issued by the government and no work has been performed on the contract, and amendments to the solicitation to reopen the BAFO stage of the procurement have been issued, plaintiff argues that the claim currently before the court should be considered a pre-award contract claim. Plaintiff contends that the government's actions following award of the contract on May 2, 1994, indicate a clear intention to reopen the procurement process. Therefore, the plaintiff argues that this court is vested with jurisdiction to entertain plaintiff's claim, pursuant to 28 U.S.C. 1491(a)(3), as review of a pre-award contract action.

### FACTS

The facts in the case appear to be largely undisputed. Plaintiff, IMS Services, Inc., is a corporation incorporated under the laws of the State of Maryland, with its principal place of business in Rockville, Maryland. The defendant, United States, conducted the procurement at issue, acting through the United States Department of the Navy, Naval Air Weapons Center, Weapons Division, Point Mugu, California.

On June 1, 1993, the Department of the Navy issued Solicitation No. N68936–93–R–0172 to obtain maintenance and operational support services for the Navy's telecommunications and local area network systems at Point Mugu, California. The Solicitation required the contractor to furnish the following services: requirements analysis, design and installation of new communications equipment and networks, management, maintenance and operational support for digital, audio, video teleconferencing, intrusion alarm, security electronic access, and electronic mail systems. The Solicitation contemplated the award to be a cost plus, fixed-fee, indefinite quantity, level of effort contract, with a one year base period and two (2) one year options. The contract was to be awarded to the bidder with the lowest evaluated cost, technically acceptable offer. The prospective offerors were informed that the Navy would perform a cost realism analysis of proposed costs as part of the evaluation process, and would evaluate " '. . . the degree to which the cost proposal reflects the approaches and/or risk assessments made in the technical proposal as well as the risk that the offeror will provide the supplies or services for the offered costs.' "

On June 23, 1993, Amendment No. 0001 to the Solicitation was issued. The Amendment extended the closing date for receipt of initial proposals to July 8, 1993, in order to add clauses, delete a clause, incorporate a Department of Labor Wage Determination and respond to contractor questions. Amendment No. 0002 to the Solicitation was issued on June 30, 1993, for the purposes of extending the closing date, to clarify which labor categories were subject to Department of Labor wage determinations and to incorporate a revised Government Estimated Level of Effort. This second amendment provided the following Navy estimates for materials, equipment and tools (MET):

| | |
|---|---|
| Base Year One | $753,760.00 |
| Option Year One | $829,136.00 |
| Option Year Two | $912,050.00 |

The above estimates were identical to the estimates included in the original Solicitation. Amendment No. 0002 proposed the agency's estimated man-hour levels of effort for required labor categories and the government's estimated cost for MET for each year of the contract. Offerors were instructed that:

> The above estimates are provided to assist in proposal preparation. The offeror is responsible for inclusions of all other estimates of elements of cost deemed necessary to perform the required work.

Ten contractors submitted proposals to the Navy on July 13, 1993, including proposals from the plaintiff, IMS Services, Inc., and from the intervenor, SRS Technologies. Five proposals were determined to be in the competitive range as susceptible to being made acceptable. At that stage of the procurement process, SRS had proposed the lowest total cost, whereas, plaintiff IMS had proposed the second lowest total cost. The plaintiff, however, alleges that SRS's proposed costs, in fact, were lower than those of

the plaintiff because SRS had utilized discounted MET estimates as opposed to the MET cost estimates calculated and supplied by the Navy in the solicitation documents which plaintiff and all the other offerors had used. SRS concedes that it did not utilize the MET costs proposed in the solicitation, but rather calculated its own MET costs, based on historical experience, which included discounts they believed would be achieved from their subcontractors.

The government officials who evaluated the offers, however, did not accept the lower MET cost estimates included in the SRS proposal and indicated to SRS that "[s]ince the [g]overnment estimate for [equipment], provided in the solicitation, was meant to be the same for all offerors, the total cost for [equipment] will be added back into [SRS's and its subcontractor's] cost proposal." Therefore, during the cost realism analysis, conducted as part of the evaluation process, the SRS proposed MET costs were adjusted upward to equal the government estimated MET costs. The upward adjustment also was undertaken because the government found that SRS had not supported adequately its lower proposed MET costs. Moreover, according to a statement included in the record by the contracting officer: "In the absence of any substantive supporting rationale for the discounting and since I [the contracting officer] felt that this type of commercial discounting would be available to any of the potential awardees, I choose to normalize this cost element."

Five offerors, including plaintiff IMS and intervenor SRS, were found to be within the competitive range. Each was invited to submit best and final offers (BAFOs) by March 2, 1994. According to the contracting officer's statement included in the record, the contracting officer received BAFOs from the competitive range offerors and determined that plaintiff IMS should be the awardee. The BAFO submitted by SRS utilized the solicitation MET costs.

On April 1, 1994, subsequent to the contracting officer's determination that IMS should be awarded the contract, the contracting officer transmitted a letter to all unsuccessful offerors indicating that IMS was the apparent successful offeror and offered the disappointed offerors the opportunity to protest the small business set aside status of IMS. As a result of the contracting officer's April 1, 1994 letter, several of the unsuccessful offerors, including SRS, requested a debriefing. SRS contacted the contracting officer regarding the pending award on or about April 4, 1994. At that time, the contracting officer informed SRS of the approximate value of the contract award to IMS.

On May 2, 1994, the Navy made an award of Contract No. N68936–94–D–0058 to IMS, as the offeror who had furnished the lowest cost, technically acceptable offer in response to the Solicitation. Also on May 2, 1994, the Navy held debriefing meetings, which were attended by unsuccessful offerors, including SRS, to discuss the rejected offer.

On May 6, 1994, SRS filed a protest with the GAO, *SRS Technologies,* B–254425.2. In the GAO protest, SRS alleged that the Navy had conducted misleading negotiations with SRS. SRS contended that the Navy had instructed it not to discount the MET cost estimates and had indicated that SRS must prepare its offer by utilizing the MET cost estimates outlined in the Solicitation. Stated otherwise, SRS contended that the Navy had failed to inform SRS that the government evaluators would have considered SRS's discounted MET costs if they had been properly supported in the offer. Therefore, in its protest, SRS argued that if it had been allowed to incorporate the discounted MET cost estimates included in its initial proposal, rather than the MET cost estimates included in the Solicitation, SRS's proposed BAFO cost would have been lower than IMS's proposed BAFO cost, resulting in a contract award to SRS, instead of to IMS. *Id.* at p. 7. In a decision dated September 14, 1994, GAO sustained SRS's protest on the basis that misleading discussions had occurred between the Navy and SRS. GAO recommended that the Navy reopen discussions and request a new round of BAFOs from the competitive range offerors.

On October 26, 1994, the plaintiff, IMS, filed suit in the United States Court of Federal Claims, seeking declaratory relief, a temporary restraining order, a preliminary

injunction and a permanent injunction, against the defendant, to bar the government from conducting a new round of BAFOs on Solicitation No. N68936–93–R–0172. Plaintiff's original complaint is based on the Navy's decision, following award of the contract to plaintiff, to reopen discussions and to conduct a new round of BAFOs under the Solicitation in order to meet the GAO recommendation. Although the May 2, 1994 contract award to plaintiff IMS has not been formally cancelled by the Navy, at no time in its written or oral presentations to this court has the defendant denied its intention to reconvene the BAFO process. Moreover, in the "Notice Regarding Schedule for Contract Award," filed in this court by the defendant on November 2, 1994, the government has laid out an elaborate schedule to issue an amendment to the Solicitation, to receive revised proposals, to conduct a new technical evaluation and qualification process, to conduct a new round of BAFOs, to conduct a new final evaluation and to issue a new determination of prospective awardee, which defendant has stated might or might not be to the plaintiff IMS.

Pursuant to discussions in court, at which counsel for all the parties were present, plaintiff filed a motion on November 22, 1994 for leave to amend the complaint, accompanied by the "First Amended Complaint for Declaratory and Injunctive Relief." The amended complaint, which has been accepted for filing by the court, contains a number of revisions and additions to the original complaint. First, the provision alleging jurisdiction has been revised to specify 28 U.S.C. § 1491(a)(3), as opposed to the more general citation of 28 U.S.C. § 1491(a) as the basis for jurisdiction. In the amended complaint, plaintiff also has clarified the allegation originally labelled by plaintiff as a breach of an implied-in-fact contract to consider IMS's March 2, 1994 BAFO fairly. Further, in the amended complaint, plaintiff has revised a portion of its allegation that the Navy had decided to reopen the bidding process based on the recommendation and decision of the GAO, so that it is no longer based on information and belief, by referring to a telephone conversation on October 13, 1994 between counsel for the Navy and counsel for IMS.

Moreover, plaintiff has added allegations that the Navy's decision was arbitrary and capricious, and, therefore, a breach of the Navy's implied-in-fact contract with IMS to consider its March 2, 1994 BAFO fairly. Last, plaintiff alleged in Count II of the original complaint that the Navy's decision to reopen the contract bidding constitutes an impermissible auction. In Count II of the amended complaint, after the filing of the original complaint, plaintiff adds further facts, which occurred and are set forth by defendant in "Defendant's Schedule for Contract Award" filed with this court on November 2, 1994. These newly established facts, plaintiff argues, support plaintiff's position that Solicitation Amendment No. 0003, which reopens the bidding process in order to conduct another round of BAFOs, will result in a procurement process constituting an impermissible auction.

## DISCUSSION

■ In a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747.

■ The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC Rule 12(b)(1), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). In rendering a decision, the court must presume the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Mi-*

*ree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

██ The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Pasco Enterprises v. United States,* 13 Cl.Ct. 302, 305 (1987); *Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. La-Hue,* 663 F.2d 713, 723 (7th Cir.1981).

The issue raised in defendant's motion to dismiss is one of jurisdiction. Defendant, in its motion to dismiss, sets forth a number of arguments in support of its position that this court lacks the appropriate jurisdiction to consider plaintiff's claims. First, defendant alleges that because plaintiff does not seek a money judgment, but seeks only declaratory and injunctive relief, plaintiff's claim cannot be maintained in this court pursuant to 28 U.S.C. § 1491(a)(1) of the Tucker Act. Second, defendant claims that because plaintiff fails to make allegations sufficient to bring its complaint within the parameters of an action for a claim or dispute arising under section 10(a)(1) of the Contract Disputes Act, 41 U.S.C. § 609 (1984), plaintiff cannot rely upon 28 U.S.C. § 1491(a)(2) of the Tucker Act for jurisdiction. Third, defendant contends that because plaintiff actually was awarded the contract at issue in this case on May 2, 1994, plaintiff's complaint is not a "pre-award" bid protest, pursuant to 28 U.S.C. § 1491(a)(3), but rather a request for specific performance of a contract which already has been awarded, and over which this court would not have jurisdiction.

In its original complaint, plaintiff asserted jurisdiction under 28 U.S.C. § 1491(a). In the amended complaint, plaintiff refined its allegation to assert jurisdiction under 28 U.S.C. § 1491(a)(3). Plaintiff also asserted jurisdiction pursuant to the implied-in-fact contract and statutory obligations of the Competition in Contracting Act of 1984, 10 U.S.C. § 2305 (1984). Relying on these provisions, plaintiff argues that despite the award of a contract, defendant's subsequent actions to reconduct the BAFO round, defendant's stated intention to reevaluate the new contract proposals received, and defendant's statements that plaintiff might not be the contract awardee following the new BAFO round, the May 2, 1994 contract award to plaintiff IMS has been rendered null and meaningless. Therefore, plaintiff contends that the basis for its claim is in the nature of a "pre-award" action, which is within this court's equitable jurisdiction to resolve. Moreover, plaintiff contends that in every solicitation issued by the government, there is an implied obligation fairly and honestly to consider all offers submitted, and that if such obligation is breached, the offeror may seek equitable relief before the underlying contract is awarded. Plaintiff alleges that by reopening the procurement process and entertaining a new BAFO round, without acknowledging or cancelling the contract award of May 2, 1994 to plaintiff, the defendant has failed to conduct the procurement process for Solicitation No. N6893693–R–0172 fairly and honestly.

██ Defendant also argues, in its motion to dismiss, that plaintiff's claim is, in fact, a request for an immediate review of the GAO decision and recommendation to the Navy to solicit, or otherwise stated, a request for a determination that GAO was wrong, together with an order from this court granting equitable relief to the plaintiff. Initially, it must be pointed out that a review of the propriety of the GAO ruling is not necessarily dispositive of the present dispute. While this court's ultimate decision will be based on all the relevant evidence presented by the parties, and this court acknowledges the specialized expertise of the GAO on government contract matters, while also applauding the carefully prepared GAO opinion issued on September 14, 1994, this court is not bound by the legal or factual findings included in that GAO opinion. Moreover, as stated by one of my colleagues, for the purposes of the present dispute, whether or not GAO's deci-

sion was rational is "legally irrelevant." *Health Systems Marketing & Dev. Corp. v. United States*, 26 Cl.Ct. 1322, 1325 (1992). In arriving at its determination on the above-captioned case, this court, of course, will consider and give appropriate weight to the well articulated GAO decision. GAO's expertise in procurement matters, aside, however, "the existence of a GAO decision does not limit this court to a review of that decision. Being by its very nature an advisory opinion, the GAO decision is not controlling on the parties or on this court." *Id.* Moreover, "[T]hat [an agency's] procurement decision can be based on advice from the GAO, however, does not make the GAO's decision dispositive upon judicial review of the agency action." *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 282 (1983). Therefore, whether or not the GAO properly or improperly advised the Navy is not at issue in the present dispute, and will not be dispositive of this action. Ultimately, this court must determine whether or not the Navy acted properly during the procurement, including its decision to reopen another round of BAFOs, not whether GAO acted rationally in advising the Navy on that issue.

It has long been an established principle of federal law that "courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction." *Ex Parte Bollman*, 4 Cranch 75, 8 U.S. 75, 93, 2 L.Ed. 554 (1807) (Marshall, C.J.); *see also UNR Industries, Inc. v. United States*, 962 F.2d 1013, 1025 (Fed.Cir.1992), *aff'd*, *Keene Corp. v. United States*, —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Thus, "[c]ourts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. 441, 8 How. 441, 12 L.Ed. 1147 (1950). The United States Supreme Court reiterated this principle restating "[t]he age-old rule" that a court may not in any case, even in the

interest of justice, extend its jurisdiction where none exists...." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988) (citing *Sheldon v. Sill*, 49 U.S. at 449).

The jurisdiction of the United States Court of Federal Claims[1] is created by statute and is, therefore, subject to the limitations and conditions included in the statute itself. The Tucker Act, 28 U.S.C. § 1491, is the primary statute defining the jurisdiction of this court, as follows:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). It is also clear, however, that: "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1007–09 (1967)). *See also United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983).

Moreover, it also is well established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85

---

1. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, changed the name of the United States Claims Court to the United States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims Court in all respects. The United States Claims Court was a successor court to the United States Court of Claims as a

result of the Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 27 (1982) codified at 28 U.S.C. § 171 (1988). Decisions of the United States Court of Claims are considered binding on the United States Court of Federal Claims. *South Corporation v. United States*, 690 F.2d 1368 (Fed.Cir.1982) (*en banc*), United States Claims Court General Order No. 1.

L.Ed. 1058 (1941) (citations omitted). The Supreme Court has stated, in a case emanating from the United States Court of Claims, that it is clear that a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Thus, except as Congress has consented to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States...." *United States v. Sherwood,* 312 U.S. at 587–88, 61 S.Ct. at 770.

It should also be noted, however, that although defendant disputes the propriety of this court's jurisdiction in the above-captioned matter, claiming that 28 U.S.C. § 1491(a)(1) does not grant this court jurisdiction over claims which seek only declaratory and injunctive relief, rather than a money judgment, defendant fails to address the impact of the amendments to 28 U.S.C. § 1491(a)(2), included in the Federal Courts Administration Act of 1992, Public Law No. 102–572, § 907(b), 106 Stat. 4506, 4519, enacted on October 29, 1992. Although the Tucker Act initially limited this court's jurisdiction over contract actions to monetary claims, the Federal Courts Administration Act specifically amends 28 U.S.C. § 1491(a)(2) to expand jurisdiction of this court to include "... a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued...." 28 U.S.C. § 1491(a)(2). *See Sharman Co., Inc. v. United States,* 2 F.3d 1564, 1572 (Fed.Cir. 1993); *L. Addison & Assoc., Inc. v. United States,* 27 Fed.Cl. 181, 182 n. 3 (1992). Therefore, even if this court were to find that plaintiff's claim is a post-award contract claim, the recent amendments to 28 U.S.C. § 1491 might impact the jurisdictional question at issue and, nonetheless, allow for declaratory relief by this court.

Plaintiff has asserted jurisdiction, not pursuant to 28 U.S.C. § 1491(a)(1)–(2), but rather pursuant to 28 U.S.C. § 1491(a)(3), which is intended to cover disputes regarding pre-award contract claims. Subsection (a)(3) of the Tucker Act, 28 U.S.C. § 1491, provides for equitable relief in a contract dispute prior to the award of the contract. The provision states as follows:

> (3) To afford complete relief on any contract *claim brought before the contract is awarded,* the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

28 U.S.C. § 1491(a)(3) (Supp.1991) (*emphasis added*).

When Congress enacted the Federal Courts Improvement Act of 1982, "... Congress conferred upon the Claims Court the power to grant equitable relief in limited circumstances." *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir. 1990) (citing *United States v. John C. Grimberg Co., Inc.,* 702 F.2d 1362, 1365–74 (Fed. Cir.1983)); *see also ATL, Inc. v. United States,* 736 F.2d 677, 682 n. 15 (Fed.Cir.1984) (citing *United States v. John C. Grimberg Co., Inc.,* 702 F.2d at 1367). One of the circumstances for which this court clearly was given the ability to exercise equitable relief when it was created is the pre-award stage of a contract procurement. "Congress was granting equitable powers and limiting their exercise to a particular stage in the government procurement process, i.e., the pre-award stage." *John C. Grimberg Co., Inc.,* 702 F.2d at 1367.

According to the plaintiff, the actions taken by defendant, subsequent to the May 2, 1994 contract award, render the issuance of the piece of paper titled "award/contract" a legal fiction. Therefore, IMS argues that plaintiff, as well as the other offerors who are participating in the second BAFO round of the procurement process, for all intents and purposes, are in the pre-award stage of the procurement on Solicitation No. N68936–93–R–0172. To the contrary, without explaining the Navy's current actions in the renewed

round of the BAFOs, subsequent reevaluation and new selection process, defendant argues that plaintiff's claim is a post-award contract dispute, merely because of the existence of the May 2, 1994 award/contract document. This court finds, however, that despite the existence of an executed document titled award/contract, due to defendant's subsequent actions, plaintiff's claim, indeed, is in the nature of a pre-award claim. As a result, the present dispute falls within the parameters of 28 U.S.C. § 1491(a)(3), and this court does have jurisdiction to review the matter.

Two cases, which warrant discussion, are cited to the court in the filings submitted by the parties as involving disputes similar to the one at bar, and as relevant to the jurisdiction issues interpreting 28 U.S.C. § 1491(a)(3) before this court. Although the reported facts of *Unified Industries, Inc. v. United States*, 24 Cl.Ct. 570 (1991), are confusing, the case involved a disappointed bidder for a contract with the Navy suing for declaratory and injunctive relief. Also, in that case a motion to dismiss was filed by defendant which argued that no jurisdiction existed in this court because a contract was already in existence. The Navy had awarded the contract to RGI, Inc., not to Unified Industries. Plaintiff Unified successfully protested to the GAO. In the meantime, the defendant had extended performance on RGI's existing contract, an action which plaintiff unsuccessfully protested. The Navy, then, resolicited proposals for the contract, although the government had disqualified plaintiff from any further participation in the procurement, due to alleged unfair competitive advantage. The contract was awarded to Computer Data Systems, Inc. and RGI protested to the General Services Board of Contract appeals (GSBCA). The GSBCA suspended performance of the contract because RGI had an existing contract, under which performance could be extended in the interim until the GSBCA reached a final decision. Plaintiff subsequently filed suit in the United States Claims Court. Defendant filed a motion to dismiss portions of the complaint based on lack of jurisdiction, arguing that because the contract had already been awarded, 28 U.S.C. § 1491(a)(3) did not allow the U.S. Claims Court to take jurisdiction over plaintiff's claim. In denying the defendant's motion to dismiss, the court found that following the GSBCA decision, the contract, in fact, was no longer in existence.

Although contrary to the arguments of either party in the instant case that the case is dispositive, the thought process of the court in *Unified* may be somewhat helpful to the analysis required in the instant case. The court wrote as follows:

> While defendant asserts that the contract still exists in some ethereal realm, hovering between concrete binding instrument and contingent future interest, the court must disagree. The practical reality is that CDSI had a legally binding promise from the government prior to the GSBCA's October 1, 1991 decision. After that decision all CDSI was left with was a mere hope, as was RGI. Neither would-be contractor had a right to any of the promises flowing from the Navy under the pre-protest contract awarded by the Navy to CDSI. In such a situation it would be to create a legal fiction to find a contract existing between CDSI and the Navy.

*Unified Industries, Inc.*, 24 Cl.Ct. at 573.

In another case cited by the parties, *Logicon, Inc. v. United States*, 22 Cl.Ct. 776 (1991), the court found jurisdiction in a case in which there was an oral promise to award a contract, but no contract had been awarded at the time the court considered the case. Although the government, verbally, had notified the plaintiff that it would be awarded the contract, the actual award in writing was delayed, due to temporary unavailability of funds. On the same date as the day on which the notice of award was given to plaintiff, the government disclosed plaintiff's proposed cost to the other two bidders. A protest was filed with the GAO by a disappointed bidder. Thereafter, the government decided to reopen negotiations with the offerors for the contract, as a result of which the GAO protest was dismissed. The government indicated it would request a new round of BAFOs; after which plaintiff in *Logicon* filed suit in the United States Claims Court for injunctive relief. Logicon claimed that the decision to reopen negotiations and request

another round of BAFOs after plaintiff's proposed costs were revealed violated the regulations prohibiting auctions. The court in *Logicon* stated that "[p]ursuant to 28 U.S.C. § 1491(a)(3), the Claims Court may grant injunctive relief in a pre-award bid protest case where the Government has breached its implied duty to consider a bid honestly and fairly." *Id.* at 782. Even though the government in *Logicon*, verbally, had awarded the contract to the plaintiff before the suit, the court took jurisdiction of plaintiff's claim as a pre-award protest when the government decided to reopen negotiations.

In a case not cited by the parties, *Parcel 49C Limited Partnership v. United States*, 31 F.3d 1147 (1994), the United States Court of Appeals for the Federal Circuit affirmed the trial court's injunctive powers to issue an injunction following contract award, in a case in which the contract, however, had been cancelled prior to performance on the contract. In *Parcel 49C*, the government issued a solicitation for building space for a new Federal Communications Commission (FCC) building. *Id.* at 1147. The GSA selected plaintiff Parcel 49C for the award, although the FCC had expressed its dissatisfaction with the award choice and had requested the GSA to award to another contractor. Subsequently, the FCC notified GSA that it was increasing its space request, whereupon GAO cancelled the contract award. Plaintiff Parcel 49C filed suit in the Court of Federal Claims protesting the cancellation. The court enjoined GAO's cancellation of the contract, based on findings that the FCC had initiated a campaign to void the contract award to plaintiff Parcel 49C and that the government's grounds for cancellation of the procurement were invalid and incredible. On appeal, the Federal Circuit upheld the jurisdiction of the Court of Federal Claims to hear the case pursuant to 28 U.S.C. § 1491(a)(3). The Federal Circuit stated that "[i]n this case, the Court of Federal Claims has properly utilized its power to grant injunctive relief in pre-award bid protests." *Id.* at 1153. The case illustrates that the wording of 28 U.S.C. § 1491(a)(3), particularly the term "pre-award," should be evaluated on the specific facts of the case presented and for the fairness of the procurement process presented, with a view towards avoiding subterfuge and fiction.

In the above-captioned case, a document titled award/contract was issued to plaintiff IMS on May 2, 1994. Nonetheless, the court believes that based on the facts of the above-captioned case, this court does have jurisdiction to review plaintiff's claim as a pre-award protest. The fact that for many months the government has not issued orders to IMS to proceed to begin work on the May 2, 1994 contract, and now has indicated that it will not do so, but rather choose to reopen the solicitation, evaluation and selection process, demonstrate that the plaintiff IMS has no more certainty that it will be awarded the contract than any other bidder at this point in time. In fact, defendant has stated that it cannot be sure which offeror will receive the contract after the renewed round of BAFOs. Although plaintiff has a piece of paper titled award/contract, which states that the contract has been awarded to IMS Services, plaintiff has no certainty or reasonable expectation that IMS will be directed to proceed under the terms and conditions of the May 2, 1994 award. As a result, that piece of paper means very little. The court agrees that a finding that plaintiff's claims are in the nature of a post-award protest would be to engage in a legal fiction. All plaintiff has is a mere hope that after the resolicitation process, plaintiff may once again be selected, and that, this time, the defendant will order it to proceed to performance. The facts presented by the instant case are in harmony with the requirements of 28 U.S.C. § 1491(a)(3), that the claim for injunctive relief be tied to a pre-award phase of the procurement process in order to vest jurisdiction in the United States Court of Federal Claims under that section.

Defendant also incorrectly interprets plaintiff's request for relief as asking for specific performance of the contract awarded on May 2, 1994. Defendant argues that "IMS requests this Court to order that it, and only it, is entitled to a contract pursuant to the Solicitation." In support of this argument, defendant cites to *CACI, Inc.—Federal v. United States*, 719 F.2d 1567, 1575 (Fed.Cir. 1983); *Scanwell Laboratories, Inc. v. Shaf-*

400

*fer,* 424 F.2d 859, 864 (D.C.Cir.1970); *Unified Industries,* 24 Cl.Ct. at 575; and *Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 711 (1985), for the proposition that this court does not have jurisdiction to award specific performance of a contract. Although the proposition stated by defendant is accurate, it is not a basis to dismiss the instant action. Defendant has mischaracterized plaintiff's request for equitable and injunctive relief as a request for specific performance of the contract at issue.

In *Scanwell Laboratories, Inc. v. Shaffer,* the court stated that "[i]t is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties. It is also incontestible that that discretion may not be abused." *Scanwell Laboratories, Inc.,* 424 F.2d at 869. That this doctrine applies to the Claims Court is also well established. *See Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 711 (1985). "From the beginning, the Tucker Act has never been held to be a valid jurisdictional source for this court to base the award of a general equitable remedy such as specific performance." *Cleveland v. United States,* 9 Cl.Ct. 741, 746 (1986) (citing *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973); *Jesko v. United States,* 3 Cl.Ct. 730, 732 (1983); *Busby School of the Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 601 (1985)).

While this court will exercise its authority, pursuant to 28 U.S.C. § 1491(a)(3), to grant injunctive relief in appropriate pre-award claims, we clearly recognize that "[t]his equitable jurisdiction does not, however, include the ability actually to award a contract...." *Arrowhead,* 8 Cl.Ct. at 711. Nonetheless, what 28 U.S.C. § 1491(a)(3) does provide is the authority for this court, in its discretion, after reviewing the merits of the application for injunctive relief, to order such injunctive relief in order to ensure that the procurement process is conducted fairly and honestly. *National Forge Company v. United States,* 779 F.2d 665, 667 (Fed.Cir. 1985) (citing *Grimberg Co.,* 702 F.2d at 1367).

*See also CACI, Inc.—Federal v. United States,* 719 F.2d at 1575; *Unified Industries,* 24 Cl.Ct. at 575–76 (1991).

Although defendant has alluded that it has been left with no other alternative but to award the contract at issue to IMS, such is not the reality of defendant's present status. By virtue of this court accepting jurisdiction of the above-captioned case, the actions of the defendant will be supervised in order to ensure that the procurement process is completed in an orderly and proper fashion. For example, as can be seen from the cases discussed above, defendant has multiple options. Defendant may direct IMS to perform under the May 2, 1994 award/contract, terminate IMS for convenience, resolicit and award the contract to the successful offeror after the renewed BAFO round, and, then, direct that contractor to perform. This court will not force the defendant to award to a particular offeror, but will direct that proper procedures be followed. In the instant opinion, the court is merely exercising its jurisdiction, pursuant to 28 U.S.C. § 1491(a)(3), to review the claim for relief brought by plaintiff IMS.

For the reasons discussed above, this court finds that it does have the requisite jurisdiction to entertain plaintiff's application for injunctive relief. Therefore, defendant's motion to dismiss plaintiff's action is, hereby, DENIED.

IT IS SO ORDERED.