LYONS SECURITY SERVICES, INC., Plaintiff,

v.

UNITED STATES of America, Defendant,

and

Premier Security, Inc., Intervenor.

No. 97–505 C.

United States Court of Federal Claims.

Sept. 16, 1997.

Alan M. Grayson, Grayson & Associates, McLean, VA, for plaintiff.

Craig R. Gottlieb, United States Department of Justice, Washington, DC, for defendant.

Lawrence J. Sklute, Sklute & Associates, Washington, DC, for intervenor.

## OPINION & ORDER

HODGES, Judge.

Lyons Security Services was a responsible, responsive low bid offeror on an Immigration and Naturalization Service contract to provide security guard services at the Agency's service center in San Pedro, California. After the bidding opened, Lyons was sold to another company. INS ruled initially that this disqualified Lyons' bid. Following an agency level protest, however, the bid was reinstated as qualified and INS awarded the contract to Lyons. Another bidder, Premier Security, protested the award before the General Accounting Office. GAO recommended that INS terminate its contract with Lyons and that Premier be awarded the

contract. Lyons challenges the INS contracting officer's adoption of a GAO decision recommending that the INS terminate its contract with Lyons.

The GAO is charged with determining whether a bid complies with statute or regulation. GAO did not find a violation of a statute or regulation, but relied instead on "policy concerns" reflected in GAO decisions and a prior Claims Court decision.[1] The decisions reflecting those concerns were issued in cases factually distinct from this one. They do not provide an adequate basis for GAO's recommendation to terminate Lyons' contract. GAO departed from prior decisions in establishing a method for determining that Lyons assets were of negligible value, thus disqualifying it for contract award. Termination of the Lyons contract was improper because the GAO recommendation relied upon by the contracting officer was not in accordance with law.

## I.

The INS solicited bids for security guard services in May 1996. When bids were opened in July 1996, Lyons was the fifth lowest bidder. Premier Security's bid was at least $500,000 higher than Lyons' bid. In August 1996 Lyons began negotiating with Kathleen Guidice, a prospective buyer of the company. They reached a preliminary agreement in August and closed the sale on September 30, 1996. On that day, INS sent a letter to the company with the lowest bid then under consideration—JFK/Hargrave—stating that its bid no longer would be considered. The Agency then rejected the second, third, and fourth-ranking bids for various defects. INS notified Lyons on October 1 that it had become the new apparent low bidder. A pre-award survey would follow.

The Defense Contract Management Command's pre-award survey determined that Lyons' bid was nonresponsive because Lyons had been sold after submitting its bid. INS

rejected Lyons on November 4 and notified Premier Security the same day that it was the new low bidder. An agency-level protest followed. The Agency sustained the protest, and reinstated Lyons in December 1996.

INS conducted another survey of Lyons in January 1997. The Agency apparently had concerns about Lyons' financial strength and its status as a "self-certified small business concern." The contracting officer referred the matter to the Small Business Administration for a size status determination and for a certification of competency pursuant to the Small Business Act. See 15 U.S.C. § 637(b)(6) (1994). SBA determined that Lyons was eligible for award and issued the certification in February 1997. INS awarded the contract to Lyons in March.

Premier filed a protest to GAO on April 3, 1997. The contracting officer notified Lyons of the protest and issued a stop work order the next day.

Premier asserted several grounds for its protest, most of which are not relevant here. GAO sustained the protest on July 14, 1997. GAO recommended that the contract previously awarded to Lyons be terminated, and that the award be made to Premier. The contracting officer terminated Lyons' contract on July 31, 1997.

## II.

After submitting a bid, if all of a bidder's assets ... are transferred during the period between the bid opening and the award, the transferee may not be able to take over the bid. Accordingly, the contracting officer shall reject the bid unless the transfer is effected by merger, operation of law, or other means not barred by 41 U.S.C. 15 or 31 U.S.C. 3727.

48 C.F.R. § 14.404–2(1).

41 U.S.C. § 15 and 31 U.S.C. § 3727 are the anti-assignment statutes. Plaintiff con-

---

**1.** GAO states that its record does not establish that, apart from the low bid, "the assets transferred pursuant to the sale were of more than negligible value. Since the sale of the business thus was tantamount to the improper sale of the bid, [Lyons] may not receive award of the contract." GAO's determination that the assets

transferred were no more than negligible was based on its calculation of net assets. That is, the agency determined the value of Lyons' assets and then reduced them by Lyons' liabilities. GAO presents no authority for such a method of determining whether the value of the assets was "negligible."

tends that the transfer of all a contractor's assets is a well-recognized exception to these statutes, and that GAO has interpreted FAR 14.404–2(1) to permit a transferee to take over a bid. The sale of Lyons to Mrs. Guidice is the type of transfer that GAO has considered to be permitted by the anti-assignment statutes until now, according to plaintiff. The transaction was "the sale of an entire business," in which substantially all of the company's assets and liabilities were transferred to the buyer.

Plaintiff argues that GAO embarked on an entirely new course when it issued its *Premier* decision recommending that Lyons' contract be terminated because its assets were negligible at the time the company was sold. GAO relied heavily on one Claims Court opinion and a related GAO decision. *See Mil–Tech Systems, Inc. v. United States*, 6 Cl.Ct. 26, 33–35 (1984); *Mil–Tech Systems, Inc. and the Dept. of the Army*, 84–1 C.P.D. ¶ 632, at 5–6 (1984). Lyons points out that Mil–Tech was a shell corporation with no assets other than the contract awarded to it by the Government, while Lyons was an ongoing business that should not be subjected to the same rule.

Plaintiff asserts that GAO imposed an "unreasonable *post hoc* burden" by requiring it to prove that all of Lyons' tangible and intangible assets were worth the values assigned to them through the buyer's and seller's arms-length negotiations. The decision also purportedly imposed another unprecedented burden upon Lyons, requiring it to prove that Lyons had assets greatly in excess of its liabilities at the time of the sale.

Plaintiff argues that GAO's bid protest authority is limited to determining whether a contract award complies with statute and regulation. *See* 31 U.S.C. § 3554(b)(1) (Supp.1997). Because GAO could not determine that the award to Lyons was not in compliance, GAO's recommendation was improper.

Defendant argues that GAO was rational in establishing a rule prohibiting bid sales if the seller's assets apart from the bid are negligible in comparison to the value of the bid. GAO properly found that Lyons' net assets apart from the bid were negligible in comparison to the value of the bid, according to defendant.

GAO determined that bid sales should be prohibited if the seller's net non-bid assets are negligible in comparison to the value of the bid. The value of the bid is described by defendant as the potential profit to be derived from the bid. Selling the corporation is tantamount to an improper assignment of a low bid, the Government argues.

### III.

#### A.

The standard to be applied to the GAO's recommendation and the contracting officer's adoption of that recommendation is set forth in the Tucker Act. *See* 28 U.S.C. § 1491(b)(4). We review the challenged agency's decision according to the standards of the Administrative Procedure Act, 5 U.S.C. § 706. The court should determine whether the Government's actions toward plaintiff were:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law. . . .

5 U.S.C. § 706(2).

■ The standard of review is not *de novo:* "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971)). Moreover, "a procurement agency's decision to follow the Comptroller General's recommendation . . . [is] proper unless the Comptroller General's decision itself was irrational." *Id.*

■ According to defendant, such deference applies not only to GAO's factual findings but also to GAO advice on matters of

law. *See Firth Construction Co. v. United States*, 36 Fed.Cl. 268, 272 (1996). Where GAO precedent can be viewed as inconsistent, however, we attach no deference to GAO's ruling. *See Bowsher v. Merck & Co.*, 460 U.S. 824, 837–38, 103 S.Ct. 1587, 1595–96, 75 L.Ed.2d 580 (1983); *Delta Chem. Corp. v. West*, 33 F.3d 380, 382 (4th Cir.1994); *see also Firth*, 36 Fed.Cl. at 275.

### B.

■ GAO acted beyond its mandate in recommending termination because it did not find that awarding Lyons the contract violated a statute or regulation.[2]

41 U.S.C. § 253b(c) provides that:

Sealed bids shall be opened publicly at the time and place stated in the solicitation. The executive agency shall evaluate the bids in accordance with subsection (a) of this section without discussions with the bidders and, except as provided in subsection (b) of this section, shall award a contract with reasonable promptness to the responsible source whose bid conforms to the solicitation and is most advantageous to the United States, considering only price and the other price-related factors included in the solicitation.

This statute requires the award to be made to the lowest-cost, responsible, and responsive bidder, absent the noncompliance with statute or regulation referred to in 31 U.S.C. § 3554(b)(1). The GAO decision points to no statute or regulation, other than FAR 14.404–2, that could have precluded Lyons from being awarded the contract. FAR 14.404–2 does not bar the bid transfer or the award to Lyons, because neither violates the anti-assignment statutes. The GAO has held

that "[w]here the transfer is incident to the sale of an entire business, the transfer is considered to have occurred 'by operation of law,' and the assignment is exempted from the anti-assignment statute." *McNeil Technologies, Inc.*, 94–1 C.P.D. ¶ 40, at 7 (1994).

GAO also has stated:

The transfer or assignment of rights and obligations arising out of a bid or proposal is permissible only where the transfer is to a legal entity which is the complete successor in interest to the bidder or offeror by virtue of merger, corporate reorganization, the sale of an entire business or the sale of an entire portion of a business embraced by the bid or proposal.

*J.I. Case Co.*, 90–2 C.P.D. ¶ 108, at 3 (1990). FAR 14.404–2 does not bar the assignment at issue. GAO had no statutory or regulatory authority upon which to base its recommendation.

### C.

With no statute or regulation barring award to Lyons, GAO relied heavily on *Mil–Tech* to justify its recommendation. *Mil–Tech Systems, Inc. v. United States*, 6 Cl.Ct. 26 (1984). *Mil–Tech*, however, is not proper support for GAO's decision in this case. The contracting officer in *Mil–Tech* noted that "Mil–Tech was not an operating corporation in any sense of the term nor did Mil–Tech possess any facilities or employees...." *Mil–Tech*, 6 Cl.Ct. at 31. Additionally,

Mil–Tech Systems, at the time of bid opening and at all times prior to the sale of stock to ATACS Corp., was no more than a shell corporation with no facilities, no ongoing contracts (no business transactions of any kind) and no employees; in short,

---

**2.** The GAO's mandate under 31 U.S.C. § 3554(b)(1), is as follows:

With respect to a solicitation for a contract, or a proposed award or the award of a contract, protested under this subchapter, the Comptroller General may determine whether the solicitation, proposed award, or award complies with statute and regulation. If the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation, the Comptroller General shall recommend that the Federal Agency—

  (A) refrain from exercising any of its options under the contract;

  (B) recompete the contract immediately;
  (C) issue a new solicitation;
  (D) terminate the contract;
  (E) award a contract consistent with the requirements of such statute and regulation;
  (F) implement any combination of recommendations under clauses (A), (B), (C), (D), and (E); or
  (G) implement such other recommendations as the Comptroller General determines to be necessary in order to promote compliance with procurement statutes and regulations. ·

with no tangible assets whatsoever. Mil–Tech had nothing of value to sell except for this one bid and Mil–Tech as it is presently constituted bears absolutely no resemblance to the entity that submitted the bid except in name.

*Id.* at 31. The *Mil–Tech* court agreed with the contracting officer's assessment, stating that "Mil–Tech's stock represented ownership of precious little other than the bid." *Id.* at 32.

A similar Comptroller General's procurement decision determined that the apparent low bidder had no facilities of any type, and at the time of the pre-award survey it was "a nonexistent company." *Information Servs. Indus.,* 77–1 C.P.D. ¶ 425, at 2 (1977). The Comptroller General stated that "the evidence of record indicates that the tangible assets transferred ... were of negligible value." *Id.* at 4. The test is "whether the negligible value of the assets, or their nominal purchase price, indicates that nothing of real value apart from the bid was transferred." *J.I. Case,* 90–2 C.P.D. ¶ 108, at 4.[3] "In this regard, 'negligible' should be given its common usage definition: 'So small or unimportant or of so little consequence as to warrant little or no attention.'" *Id.* (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY).

If GAO compared Lyons' assets to its liabilities to reach its conclusion that Lyons possessed assets of only "negligible value," it departed not only from the Claims Court's *Mil–Tech* decision, but also from its own prior decisions. "The test is not whether the assets are comparable in value to the bid, but rather, whether the negligible value of the assets, or their nominal purchase price, indicates that nothing of real value apart from the bid was transferred." *J.I. Case,* 90–2 C.P.D. ¶ 108, at 4. If GAO did not make the comparison, then GAO could not have concluded that Lyons' assets had only negligible value. Lyons was an ongoing business.

---

3. Transferred assets in *J.I. Case* included employees and an ongoing contract. This finding supported the GAO's holding that the transfer of a bid to a successor in interest was permissible, as distinguished from the situations presented by

### D.

Mrs. Guidice agreed to purchase Lyons for $150,000 cash plus assumed liabilities in August 1996. This was more than five weeks before INS notified JFK/Hargrave that its bid was being rejected and before it notified Lyons that it had become the new low bidder for the San Pedro contract. Lyons and Mrs. Guidice closed the sale for $150,000 with assumed liabilities of approximately $82,000 on September 30, 1996. This was one day before Lyons was notified that it was the low bidder for the contract. Lyons was an ongoing business with substantial tangible and intangible assets. It had uniforms, trucks, employees, and over 50 accounts. It was not the "shell corporation" described in *Mil–Tech.* GAO acknowledged that Lyons possessed "licenses, inventory, accounts receivable, goodwill, trademarks, trade names, [and] copyrights."

GAO ruled that Lyons was "clearly failing by the time of the sale," yet Lyons never failed. Lyons retained its pre-sale assets and employees after the sale—including the management services of Mrs. Lyons—and continued to perform its contracts and to conduct business as it had for 14 years.

GAO doubted that certain documents prepared contemporaneously with the sale established that Lyons' non-bid assets were of more than negligible value. Assuming significant credibility problems with respect to documents relating to Lyons' financial position, however, it cannot rationally be said that the assets transferred were "so small or unimportant or of so little consequence as to warrant little or no attention." Lyons was an ongoing business, not a shell. This case is not *Mil–Tech.*

### E.

GAO decisions have permitted transfers of bids, proposals, or contracts in situations similar to this one. *See J.I. Case Co.,* 90–2 C.P.D. ¶ 108, at 4; *Keco Indust.,* 82–2 C.P.D. ¶ 165, at 2 (1982) (*citing Numax Electronics,*

---

*Information Services* and *Mil–Tech. J.I. Case,* 90–2 C.P.D. ¶ 108, at 4–5. GAO emphasized the existence of the transferred assets rather than their exact monetary value. *See id.*

*Inc.,* 54 Comp. Gen. 580, 584 (1975)); *see also McNeil Technologies, Inc.,* 94–1 C.P.D. ¶ 40, at 7–8 (1994). GAO decisions have invalidated transfers when the assets were of negligible value and nominal consideration supported the transfer. In this case, GAO devoted little attention to the "nominal consideration" portion of the inquiry, resting its decision instead on the ground that the assets were of negligible value. GAO did not consider the effect that the consideration paid for Lyons' assets would have on its analysis. GAO's comparison of net non-bid assets with the value of the bid represents a departure from GAO precedent. GAO's comparison of Lyons' assets with its liabilities to arrive at the conclusion that Lyons' assets were of negligible value also is a departure. The process by which GAO arrived at its recommendation was not consistent with GAO precedent; it is not entitled to deference.

Defendant urges that "[t]he rationality of a decision on bidder eligibility . . . can be measured against analogous principles that the Comptroller General has developed in the absence of statute or regulation." *Mil–Tech,* 6 Cl.Ct. at 35. If so, that principle cannot apply here. The Government's test in this case has no precedent. The test cannot be "measured against analogous principles that the Comptroller General has developed." Prior GAO decisions do not establish a consistent principle by which one would arrive at the result reached here.

We do not rule that GAO may never base a decision on policy considerations. *See, e.g., Compliance Corp. v. United States,* 22 Cl.Ct. 193, 199–200 (1990), *aff'd,* 960 F.2d 157 (Fed. Cir.1992); *Medical Devices of Fall River, Inc. v. United States,* 19 Cl.Ct. 77, 83 (1989); *Mil–Tech,* 6 Cl.Ct. at 33–34. Here, however, GAO invoked a policy that is not implicated by the facts of this case.

### F.

Defendant and intervenor have emphasized the relationship between Mrs. Guidice and United International Investigative Services, the incumbent contractor owned by Guidice's husband. GAO did not base its decision on this relationship, however, and we see no reason to infer an impropriety from Mrs. Guidice's marital status.

### CONCLUSION

The contracting officer's decision to adopt the GAO recommendation to terminate Lyon's contract was an abuse of discretion. The decision violates 5 U.S.C. § 706(2) because it would result in an award of the San Pedro contract to a bidder who was not the lowest-priced, responsive and responsible bidder. *See* 41 U.S.C. § 253b(c). Plaintiff's request for declaratory and injunctive relief is GRANTED. The Clerk will enter judgment remanding this case to the contracting officer for appropriate action consistent with this Opinion and Order. Costs to plaintiff.