FIRTH CONSTRUCTION
CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

M.R. Dillard Constr. Co., Intervenor.

No. 96–393C.

United States Court of Federal Claims.

July 22, 1996.

lard Construction Co. ("Dillard"). Dillard has been served with all the pleadings here and has made an appearance to defend its interests. The dispute has been the subject of an opinion by the General Accounting Office ("GAO"). The Government voluntarily agreed not to make the award to Dillard prior to July 23, 1996. The parties have agreed to merge consideration of the motions for preliminary and permanent injunctions. Argument was heard on July 18, 1996. For the following reasons, the court grants the permanent injunction sought by Firth.

Peter M. Kilcullen, Washington, DC, for plaintiff. Claude P. Goddard, Jr., of counsel.

Elizabeth A. Rinaldo, Washington, DC, with whom were Assistant Attorney General Frank Hunger, David Cohen, and Sharon Y. Eubanks, for defendant. Robert Pessolano, Army Corps of Engineers, of counsel.

James A. Pemberton, Washington, DC, for intervenor M.R. Dillard Construction.

### ORDER ON MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

BRUGGINK, Judge.

This is an action brought pursuant to 28 U.S.C. § 1491(a)(3) (1994). It concerns a dispute over the award of a contract to lay additional railroad track at Fort Campbell, Kentucky, by the Louisville District of the United States Army Corps of Engineers ("Corps"). Firth Construction Co. ("Firth") seeks an order permanently enjoining an award to the apparent low bidder, M.R. Dil-

## BACKGROUND [1]

The Corps issued Solicitation No. DACA27–96–B–0014 on January 10, 1996. The invitation for bids ("IFB") was on Standard Form ("SF") 1442, as required by the Federal Acquisition Regulations ("FAR"). 48 C.F.R. § 53.236–1(e).[2] Offerors were required to complete the SF 1442 in responding to the IFB. Six amendments were issued to the IFB using SF 30s. Only one is relevant to the resolution of this dispute. An SF 30 was issued on February 2, 1996, announcing Amendment No. 0003. Its only effect was to change the bid opening date from February 13 to February 22, 1996. The SF 30 bore the legend: "Page 1 is deleted and page 1 (Amdt. # 0003), enclosed, is substituted therefor." Attached to the SF 30 was a revised SF 1442, reflecting the new bid opening date.[3]

The Corps received fifteen responses to the IFB. Dillard was the apparent low bidder, at $13,425,372. Firth submitted the second lowest bid, at $13,519,737.62. The high bid was $16,925,486. The Corps' "Synopsis of bid opening" noted a number of defects in Dillard's submission. Dillard was bidder "# 2." The synopsis records under "Informalities," that "# 2 did not complete [Repre-

---

1. The parties agree that the record constitutes the exhibits offered at the hearing and the attachments to the prior filings.

2. All FAR references are to the 1995 edition of title 48 of the Code of Federal Regulations.

3. Amendment 0003 is unlike the other five amendments in two respects. It did not bear the statement: "Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect." Also, unlike the other amendments, 0003 attached a new SF 1442.

sentations & Certifications] (11(a)).["][4] Under "Other remarks," it states that "# 2 failed to submit SF 1442 (Amendment 0003). Request completed SF 1442 (front & back page) if # 2 is successful low bidder."

The GAO's opinion recites that Dillard's bid package included the first page of the original SF 1442. The record assembled by the parties reflects no such page. The circled number "2", placed on Dillard's submission by the Corps at the bid opening, appears on its SF 24, the bid bond. Normally the bidder's number would appear on the first page of the SF 1442, as that would be the covering document for a bidder's package.

The agency offered the affidavit of Ms. Denise Gill, a procurement technician for the Corps. She observed the opening of the bids and was tasked with reviewing the bidding papers for discrepancies. Ms. Gill recites that Dillard's bid did not include either the front or back page of an SF 1442. The only evidence to the contrary is contained in the affidavit of Harry Q. Horner, General Superintendent for Dillard. Mr. Horner participated in putting together Dillard's bid. He avers that Dillard's submission included page one of the original SF 1442. The court need not resolve this issue, however. The GAO opinion places no reliance on the presence of the first page of an SF 1442. It is undisputed that the back page of the original SF 1442 was not submitted. Nor is there any dispute that no part of the new SF 1442 accompanied the cover sheet of Amendment 0003 when it was returned by Dillard as part of its bid package.

In addition to the name, address, and phone number of the offeror, the missing second page of the SF 1442 indicates the bid amount and the minimum bid acceptance period. It also reflects an acknowledgement of amendments as well as the requirement to submit performance and payment bonds, and it calls for the name, title and signature of a person authorized to bind the company to the offer.

Materials submitted as part of Dillard's bid package included the first page of the SF 30, acknowledging the amendment of the bid opening date. The signature of "M.R. Dillard, Owner" on the SF 30 was not an original, however, it was a stamp. No corporate resolution approving the use of such a stamp was enclosed. An Optional Form 336, which contained the total bid price and an abbreviated procurement integrity statement was included and bore the stamped signature of M.R. Dillard. Similarly, Dillard's stamped signature was placed on the Bid Bond. The package also included Section K, containing various certifications and representations, although the response to part 11(a) was omitted. Finally, the bid package included a Certificate of Procurement Integrity ("CPI"), signed by Harry Horner. No title or office for Mr. Horner was provided with the submission, however.

As the apparent low bidder, the Corps advised Dillard that it had failed to submit a completed SF 1442. On February 28, six days after bid opening, Dillard faxed a completed form to the Corps, signed by M.R. Dillard. An original version was later submitted. On March 7, 1996, the Corps awarded Contract No. DACA27–96–C–0040 to Dillard.

On March 11, 1996, Firth filed a protest with the Corps. Two days later, the Office of Counsel advised the Contracting Division that the award to Dillard was improper because its bid was non-responsive due to the lack of an original signature on the SF 1442, and due to the absence of any other satisfactory indication that the bidder intended to be bound. Based on this advice, by letter dated April 17, 1996, the Contracting Officer ("CO") cancelled the award to Dillard, on the grounds that the contract was "invalid."[5]

On April 26, Dillard protested the cancellation to the GAO. During the protest, Dillard submitted evidence that Horner was authorized to bind the company. On June 28,

---

**4.** The representations and certifications under 11(a) deal with the certification that a business is a woman-owned small business. The failure to include these representations and certifications is not important to the resolution of this case.

**5.** On the same day the CO issued a modification to the contract "rescinding" the award. This rescission was premised on the same grounds articulated in the CO's cancellation letter.

1996, GAO sustained Dillard's protest, concluding that Horner's signature on the CPI was sufficient to render Dillard's submission responsive. The GAO decision constitutes a recommendation to the Corps. The Corps has announced its intention to follow the recommendation and award the contract to Dillard. Accordingly, this action by Firth followed.

## DISCUSSION

### Jurisdiction

■ The court has jurisdiction over contract disputes pursuant to the Tucker Act. 28 U.S.C. § 1491(a)(1) (1994). The response to an invitation for bids by a bidder forms an implied contract, the terms of which require the Government to fairly and honestly consider an offeror's bid. *Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1235 (1970). Once jurisdiction over the implied contract attaches, the court has authority to enjoin award of the contemplated procurement contract. 28 U.S.C. § 1491(a)(3).

■ The intervenor argues that jurisdiction is not proper in this forum. It contends that, the contract having once been awarded to Dillard, the plaintiff is too late to invoke this court's "pre-award" jurisdiction. Dillard is correct that, if it is too late to enjoin award of the procurement contract, the action must be pursued in district court.

The facts of the case are somewhat unusual. Here, the underlying contract to lay railroad track had been awarded initially to Dillard. If that is where things continued to lie, the case would have to be transferred to district court. Things did not remain in that posture, however. The initial award was cancelled by the CO.[6] If a contract ever came into existence, it ceased to exist after the cancellation. The status quo is that no contract exists to lay rail. The simplest proof of this fact is that, in the absence of additional action by the Corps, Dillard will not be in a contractual relationship with the Government. It is the agency's announced intention to award the contract to Dillard which prompts the dispute. There is, in other words, something to enjoin. *See IMS Servs., Inc. v. United States,* 32 Fed.Cl. 388, 399 (1994); *Unified Indus., Inc. v. United States,* 24 Cl.Ct. 570, 573 (1991). As such, the court has jurisdiction to grant injunctive relief.

### The merits

■ The present case poses the question of what are the minimum elements necessary for a binding offer. To put things in the context of the GAO decision in the case at bar, can a bid package still constitute a legally binding offer if it does not include:

> an offer section including, among other items, spaces for the bidder to enter the name and title of the person authorized to sign the offer, a space for that person's signature, and spaces to acknowledge amendments ... the dollar amount of [the] bid ... the minimum bid acceptance period and the bidder's agreement to furnish performance and payment bonds.

*M.R. Dillard Constr.,* B–271518.2, June 28, 1996, at 1 (hereafter "GAO Op."). The GAO concluded that it does. The court disagrees.

The net effect of the GAO decision in this case is that the agency had no choice but to accept this bid package as responsive. It would be a violation of the regulations, in other words, to treat a bid package with no signature on an SF 1442, no commitment to furnish a performance and payment bond, no period within which the "bid" was valid, no signed amendment, and no signed bid bond as non-responsive. All these defects were, according to the GAO, either cured elsewhere in the bid or were "minor informalities or irregularities."

■ The precise subject of review in this case is, of course, not the GAO decision. What this court is reviewing is the agency's announced intention to award the contract to Dillard. But whether that determination is arbitrary, capricious, or not in accordance

---

**6.** Whether the cancellation terminated a valid contract or rescinded an invalid award is immaterial. The CO is vested with complete authority to do either. Even if he acted in error, a contract no longer exists. The mere fact that Dillard may have a remedy for the recision of a prior contract does not require the finding that a contract exists today.

with law, must be considered in light of the GAO recommendation. To the extent that the agency chooses to follow the advice of the GAO, the courts should only intervene if the advice the agency receives is "irrational." *Honeywell Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (stating "a procurement agency's decision to follow the [GAO] recommendation ... was proper unless the Comptroller General's decision itself was irrational"). Thus, if the GAO's advice is rational, it is not arbitrary or capricious to follow it. This analysis has been applied to the GAO's advice on matters of law, on the theory that the GAO's interpretation of procurement regulations is entitled to deference. *See Shoals Am. Indus., Inc. v. United States,* 877 F.2d 883, 888 (11th Cir.1989).

From a practical standpoint, therefore, the real inquiry is whether the GAO's recommendation that the bid package was, as a matter of law, responsive, is rational. Firth contends that the GAO's decision that Dillard's submission satisfied legal requirements of the FAR was irrational and erroneous as a matter of law. The court takes this to mean that any alleged errors of law must be clear and not subject to reasonable disagreement over interpretation. For the following reasons, the court concludes that the GAO recommendation is irrational.

 Bids that fail to conform to the essential requirements of the IFB must be rejected. FAR § 14.404–2(a). In determining what the essential requirements of a bid are, decisions of the GAO refer to the "material" provisions of the IFB. *See Seaboard Elecs. Co.,* B–237352, 90–1 CPD ¶ 115; *Control Line, Inc.,* B–235747, 89–2 CPD ¶ 313. The Court of Claims defined the limit of permissible waivers as those that do not go "to the substance of the bid or work an injustice to other bidders. A substantial deviation is defined as one which affects either the price, quantity, or quality of the article offered." *Prestex Inc. v. United States,* 162 Ct.Cl. 620, 627, 320 F.2d 367, 372 (1963) (footnote omitted). The applicable regulations characterize the inquiry as whether the missing element goes to substance or mere form, FAR § 14.405, and suggest that the element of "delivery" should be included.

FAR § 14.405(d)(2) (failure to acknowledge amendments).

The regulations also address the consequences of a bidder neglecting to sign a bid. In the section dealing with "Minor informalities or irregularities in bids," unsigned bids are deemed non-responsive, unless:

(1) the unsigned bid is accompanied by other material indicating the bidder's intention to be bound by the unsigned bid (such as the submission of a bid guarantee or a letter signed by the bidder, with the bid, referring to and clearly identifying the bid itself); or

(2) The firm submitting a bid has formally adopted or authorized, before the date set for opening of bids, the execution of documents by typewritten, printed, or stamped signature and submits evidence of such authorization and the bid carries such a signature. . . .

FAR § 14.405(c). As explained in the GAO opinion, the reason for the general rule is clear: "[A]n unsigned bid must be rejected as unresponsive because without an appropriate signature, the bidder would not be bound should the [G]overnment accept the bid." GAO Op. at 2.

Despite the lack of a signed SF 1442, the GAO recommended treating Dillard's package as responsive because the CPI bore an original signature by Dillard's general superintendent, Mr. Horner. GAO Op. at 3. The Office pointed to its decisions in *Johnny F. Smith Truck and Dragline Services, Inc.,* B–252136, 93–1 CPD ¶ 427; and *JRW Enterprises, Inc.,* B–250480, 93–1 CPD ¶ 111, for the proposition that a signed CPI included in a bid package is sufficient to show a bidder's intention to be bound by an unsigned bid. Although Mr. Horner's authority to sign did not accompany the bid, the GAO has allowed proof of authority to be submitted after bid opening, *Hutchinson Contracting,* B–251974, 93–1 ¶ 391; *Alpha Q, Inc.,* B–234403.2, 89–2 CPD ¶ 401, and in this case it was.

The GAO was untroubled by indications within the bid package that M.R. Dillard, rather than Mr. Horner, was the person authorized to sign bid documents on behalf of Dillard. Indeed, there is GAO precedent

allowing different individuals to sign the bid and the CPI. *Schmidt Eng'g Equip., Inc.: Defense Logistics Agency—Recon.,* 72 Comp. Gen. 262, 263 (1993), 93–1 CPD ¶ 470; *Hutchinson Contracting,* 93–1 CPD ¶ 391 at 2. Moreover, under the GAO's theory of the action, there is no real conflict, because the use of a stamped signature on the bid bond and the SF 336 (alternative CPI) is ignored.[7] Horner's signature on the CPI becomes the signature on the non-existent bid, not Dillard's.

The lack of an original signature on the bid bond also was not troubling to the GAO for the same reason, despite earlier precedent that a stamped or copied signature is ineffective on a bid bond or guarantee. *See, e.g., Hugo Key & Son, Inc.,* B–245227, 91–2 CPD ¶ 189; *Pollution Control Indus. of America,* B–236329, 89–2 CPD ¶ 489; *Porter Contracting Co.,* B–228506, 87–2 CPD ¶ 547. Although the bid itself was not signed here, the GAO deemed it signed by way of Horner's signature on the CPI. Hence, it cites decisions waiving an original signature on the bid bond when it is "submitted with a bid which contains a signature sufficient to bind the bidder." GAO Op. at 5 (citing *Noslot Pest Control, Inc.,* 68 Comp.Gen. 396 (1989), 89–1 CPD ¶ 396; *The Ryan Co.,* B–233848, 89–1 CPD ¶ 309). In the cited decisions, however, the bid itself was submitted in completed form and with an original signature elsewhere in the bid documents. Those are not the present facts.

The missing elements of the back of the SF 1442 were filled in by the GAO as well. According to its opinion, these terms were impliedly accepted when Dillard "acknowledg[ed] receipt of an amended version of the SF 1442, containing the same material provisions as the omitted SF 1442." GAO Op. at 5. It is at this juncture that the court loses the scent of the GAO's reasoning. The GAO recites that the first page of Amendment 0003, the SF 30, was part of Dillard's bid package. Although it bore a stamped signature, the SF 1442 permitted use of facsimile signatures to acknowledge amendments. From the presence of the first page of the

amendment, the GAO concluded that Dillard had bound itself to the provisions of the SF 1442.

 The decisions of the GAO, other than the one at bar, have had a consistent thread. The bid package has to obligate the bidder to perform in accordance with the material terms of the IFB. *Control Line, Inc.,* 89–2 CPD ¶ 313; *Weber Constr.,* 89–1 CPD ¶ 309. There are two elements to the inquiry: a clear intent to be bound, and sufficient terms so that acceptance of the offer forms a contract on the basis of the agency's IFB. *See Johnny F. Smith Truck and Dragline Services, Inc.,* 93–1 CPD ¶ 427; *JRW Enterprises, Inc.,* 93–1 CPD ¶ 111; *Control Line, Inc.,* 89–2 CPD ¶ 313; *Weber Constr.,* 89–1 CPD ¶ 309.

With respect to the first element of the inquiry, the GAO was satisfied with Harry Horner's signature on the CPI. Under its prior precedent, there can be no real dispute with that analysis. Horner's authority could be established after bid opening, and his signature on the CPI is potentially sufficient to obligate the offeror, despite the lack of signature on an SF 1442.

The real question here is whether the bid package contained sufficient terms so that the agency's acceptance of the bid, without more, would have formed a contract binding Dillard to the terms stated in the IFB. Under prior decisions of the GAO, elements of the SF 1442, such as when performance will commence, when it will be completed, acknowledgment of the obligation to furnish bonds, and an agreement to hold the bid open for a specific period of time, are material. Their omission causes the bid to be nonresponsive. *C.J.M. Contractors, Inc.,* B–250493.2, 92–2 CPD ¶ 376; *Control Line, Inc.,* 89–2 CPD ¶ 313; *Weber Constr.,* 89–1 CPD ¶ 309. In this case, what was omitted, by the absence of a complete SF 1442, was an agreement to hold the bid open for a certain period of time, the acknowledgement of amendments, the price, and acknowledgement of the obligation to furnish performance and payment bonds.

---

7. M.R. Dillard's stamped signature also appears on the amendments, but the SF 1442 specifically permitted facsimile signatures on amendments (although they were not permitted on the IFB).

The bid amount was stated in the CPI, however, and the receipt of each amendment was separately acknowledged. Ultimately, two material terms were missing entirely from Dillard's bid package, the bond commitment and the period of bid validity. The GAO opinion in this case stated that these were material terms. GAO Op. at 1. The latter term specifically has been found by the GAO to be a material term, the omission of which renders a bid non-responsive. 39 Comp.Gen. 779, 780 (1960). The court agrees that neither term is merely a matter of form; both are substantive.[8]

The GAO's earlier decisions are an adaptation, in the procurement context, of a basic principle of contract law: "An acceptance must comply with the requirements of the offer as to the promise to be made or the performance to be rendered." Restatement (Second) Contracts § 58.[9] Although the bid was technically an offer itself, it had to be responsive to the IFB. The invitation solicits offers. The Federal Acquisition Regulations provide that a bid "must comply in all material aspects with the invitation for bids." FAR § 14.301(a). This juncture, or lack of it, between the invitation and the offer is referred to in the regulations as "responsiveness." In the context of a competitive sealed bid such as this, the agency is obligated to award the contract to the lowest bid by a responsive, responsible bidder. FAR § 14.103–2.

Offers have to conform to the invitation because, as the FAR continues, "compliance enables bidders to stand on an equal footing" thereby maintaining the integrity of the sealed bidding system. *Id.* That integrity would be compromised if bidders, by not responding on substantially identical terms as those outlined in the invitation, were not bound at the time of bid opening to an offer which the agency could immediately accept.

The rationale for enforcing the responsiveness requirement was explained by the Court of Claims:

> The requirement that a bid be responsive is designed to avoid unfairness to other contractors who submitted a sealed bid on the understanding that they must comply with all of the specifications and conditions in the invitation for bids, and who could have made a better proposal if they imposed conditions upon or variances from the contractual terms the government had specified.

*Toyo Menka Kaisha, Ltd. v. United States,* 220 Ct.Cl. 210, 219, 597 F.2d 1371, 1377 (1979). Another rationale for enforcing a certain discipline onto the contract formation process is to avoid the "toils of ambiguity," when courts are called upon to conduct autopsies on poorly written agreements. *WPC Enters., Inc. v. United States,* 163 Ct.Cl. 1, 1, 323 F.2d 874, 875 (1964).

The GAO decisions are consistent in their approach to filling in missing material terms. "[T]he bid must be submitted in such form that acceptance would create a valid and binding contract requiring the bidder to perform in accordance with all the material terms and conditions in the invitation." *Jones Floor Covering, Inc.,* 84–1 CPD ¶ 319 at 2. The inquiry is whether what the company did submit in binding form incorporates by reference the missing terms. *Werres Corp.,* B–211870, 83–2 CPD ¶ 243 (omitted pages in a bid form incorporated by reference in Table of Contents and by reference to total number of pages). Accordingly, the GAO has found bids to be non-responsive when the package failed to include the equivalent of an SF 1442, despite the inclusion of a bid bond and amendments to the IFB, because those documents did not "refer to or incorporate" all the material provisions of the IFB. *Control Line, Inc.,* 89–2 CPD ¶ 313 at

8. Paragraph 13(D), appearing on page one of the SF 1442, contains the requirement that offers must be good for at least 120 calendar days. Paragraph 17, appearing on page two of the SF 1442, contains the bidder's representation about the duration of the offer. Although a default period of 120 days is included, agreement to the default cannot be inferred from page one, only from page two. Under the terms of paragraph 13(D) of the IFB, therefore, Dillard's failure to

include a bid acceptance period meant that the offer "[would] not be considered and [would] be rejected."

9. Similarly, the Restatement provides that, "It is essential to a bargain that each party manifest assent with reference to the manifestation of the other." Restatement (Second) of Contracts § 23.

2 ("provisions included in the SF 1442, such as those dealing with performance commencement and completion, which clearly are material," were not part of bid bond and amendment); *Jones Floor Covering*, 84–1 CPD ¶ 319 at 2 (statement in amendment that all previous terms and conditions "remain unchanged and in full force and effect" was insufficient to incorporate material terms of the SF 1442). It is necessary, in other words, that the document relied upon, in this case the acknowledgment of Amendment 0003, establishes what the "terms and conditions were" and commits "the bidder to perform in accordance with those terms and conditions." *Union City Plumbing*, 83–1 CPD ¶ 614 at 2.

■ Responsiveness, *vel non*, moreover, is determined at the time of bid opening. Accordingly, a bid that is non-responsive on opening may not be made responsive by subsequent submissions or communications. *Central States Bridge Co.*, B–219559, 85–2 CPD ¶ 154; S. Feldman, *Government Contract Awards*, § 27:15.

■ The GAO found that the missing terms of the IFB were incorporated by reference through Amendment 0003 to the solicitation. GAO Op. at 5. The court is obliged to give deference to the GAO decision. But it can only do so to the extent its analysis can be followed and to the extent it expresses a principle that can be applied elsewhere. *Accord Bowsher v. Merck & Co.*, 460 U.S. 824, 839, 103 S.Ct. 1587, 1596, 75 L.Ed.2d 580 (1983) (to be entitled to deference, GAO position must represent consistent view). In the present case, the GAO's opinion provides no analysis or explanation of how the missing SF 1442 or its terms are incorporated in the offer. It merely cites the *Weber* decision without discussion. Because that decision provides no apparent support for the result, it should have been distinguished or explained.

■ Incorporation by reference requires, as the phrase suggests, a reference in one document to the terms of another. More importantly, however, the incorporating document must not only refer to the incorporated document, it must, fairly construed, bring the terms of the incorporated document into itself as if fully set out. The real problem here is that the missing terms of the SF 1442 are nowhere to be found in anything actually submitted by Dillard. In order to fill in the gap, the GAO imported the relevant terms into the bid package through Dillard's submission of the first page of Amendment 0003. The GAO infers the presence of an SF 1442, and hence the missing terms, as well as agreement to the terms of the SF 1442. The difficulty, however, is that only page one of the amendment was returned, not the new SF 1442. The statement on SF 30 that page one of the new SF 1442 is attached is not accurate with respect to the SF 30 actually returned by Dillard.

The court has not been cited to, and is otherwise unfamiliar with, any court decision or opinion of the GAO in which a bid was treated as responsive despite the omission of an SF 1442, unless its missing terms could be found in other material actually submitted by the bidder. The cases have only permitted the submission of an unsigned SF 1442 if other indicia of agreement to relevant terms are present. Typical is *Oxbow Enterprises*, B–244696, 91–2 CPD ¶ 275, in which an SF 1442 was omitted by the protester:

> [W]here a bidder fails to return the SF 1442 with its bid, the bid must be rejected as nonresponsive [sic] unless the bid elsewhere evidences the bidder's agreement to be bound by the minimum acceptance period and the other material provisions included in the SF 1442.

*Id.* at 1; *see also Control Line, Inc.*, 89–2 CPD ¶ 313 (same). It is the act of returning either the blank form or some other document stating the missing terms (assuming there is a signature elsewhere) that fills in the elements of the offer. Here, Dillard did not send in the new or old SF 1442 and the two missing terms appear in no other materials submitted by it.

What would be the principled limit to the GAO's alternative analysis in this case? What if a bidder submits an envelope on which the solicitation number appears and in which is enclosed a single slip of paper bearing the words, "I have received the IFB; $13,474,352." If terms can be read into an

offer based solely on acknowledging receipt of the IFB, then such a minimalist "bid" would be responsive.

There is another problem with the inferences the GAO drew from the return of the SF 30. Nothing on that sheet indicates that the bidder is *agreeing* to any terms of the original IFB or the amended SF 1442. Signing the SF 30 merely acknowledges receipt of the amendment. A clear line of GAO decisions establishes its position that an amendment does not, by itself, constitute an agreement to the terms of the original solicitation. *Weber Constr.*, B–233848, 89–1 CPD ¶ 309; *Jones Floor Covering, Inc.*, B–213565, 84–1 CPD ¶ 319; *Union City Plumbing*, B–208500, 83–1 CPD ¶ 614. It would be a gross twisting of the effect of the acknowledgement of receipt of a document to treat that acknowledgement as agreement to all its terms. If the Government had sent Amendment 0003 by mail, return receipt requested, the return of that acknowledgement from a prospective bidder could not be treated as an offer or as an agreement to be bound by the terms of the amendment. The prospective bidder would merely be acknowledging receipt of the amendment.

*Weber* is, as plaintiff points out, an odd choice by GAO to support its conclusion. The same terms missing in the case at bar (found to be material), were missing in that case. The putative awardee argued that the bid bond, the representations and certifications, and the first pages of amendments to the IFB constituted a basis for incorporating the missing terms. The GAO in *Weber* rejected that suggestion. Referring to its opinion in *Union City Plumbing*, the GAO advised that "acknowledging an amendment ... [which stated] that terms and conditions were otherwise not changed, does not establish what the unchanged terms and conditions were nor does it include a commitment by the bidder to perform in accordance with the terms and conditions of the solicitation." *Weber Constr.*, 89–1 CPD ¶ 309, at 3 n. 2.

The amendment in the case at bar does not even contain the language relied on by the protesters in *Weber* or *Union City Plumbing*. There is absolutely nothing in the amendment as returned by Dillard to sug-

gest an incorporation of the omitted terms, much less that Dillard agreed to those terms. Under these circumstances, an unexplained reference to an apparently non-supportive authority (*Weber*), is no support at all for the critical step in the GAO's analysis. At no place in Dillard's bid package was there a page two of an SF 1442. On the face of it, submission of the first page of Amendment 0003 does not constitute agreement to the terms of the IFB. That act, by itself, was not an enforceable offer to contract. It follows that, at the time of bid opening, nowhere in the offer was there a statement as to the duration of the offer or an agreement to provide performance and payment bonds, nor was there any specific incorporation of any document containing such terms that was submitted along with the offer.

Contracting is a sentient process. There must be objective proof of a meeting of the minds. The prospective contracting parties are not expected to engage in telepathy. There must be a confluence of assents around specific terms. For that reason, as the GAO has taught in the past, a bid which is ambiguous must be rejected as non-responsive. *Southwestern Bell Corp.*, GSBCA No. 10321–P, 90–1 BCA ¶ 22545, 1989 WL 156319 (1991).

Whether a bid package is responsive to the IFB should involve the application of principled inquiries which can be duplicated in other circumstances. What are the minimal elements of a bid, and what inferences can be legally drawn from them? At the critical stage in its analysis here, however, the GAO draws a legal conclusion with no principled support. Drawing from a small quantity of facts and bootstrapping one inference into another, the GAO creates a mutually interdependent chain of implied terms to the offer. In this process of creation *ex nihilo*, the GAO ignores its own clear lines of precedent and fails to give adequate consideration to basic questions of contract formation, as well as to the applicable procurement regulations. It would require a confidence in alchemy rather than reason to conclude, as the GAO did, that the missing terms were incorporated by reference. The decision was therefore irrational, and the agency would be arbitrary, capri-

cious, and acting contrary to law in following it.

## CONCLUSION

Based on the foregoing, plaintiff's request for a permanent injunction is hereby granted. The Clerk is directed to enter judgment enjoining the Corps from awarding the contract under solicitation No. DACA27–96–B–0014 to Dillard Construction Co. Costs to plaintiff.