ECDC ENVIRONMENTAL,
L.C., Plaintiff,

v.

The UNITED STATES, Defendant.

and

Great Lakes Dredge & Dock
Co., Intervenor.

No. 97–723C.

United States Court of Federal Claims.

Jan. 30, 1998.

Denis James Lawler, Philadelphia, PA, for plaintiff. Robert G. Fryling; Edward J. Hoffman; Maria Cassalia Kersten; Blank, Rome, Comisky & McCauley; Frank G. Capece; and Waters, McPherson, McNeill, P.C., of counsel.

Pamela A. Roth, Department of Justice, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director; and Kirk T. Manhardt, Assistant Director, of counsel.

Peter L. Wellington, Washington, DC, for Intervenor. Daniel C. Sauls; and Steptoe & Johnson, LLP, of counsel.

## OPINION

FUTEY, Judge.

This case is presently before the court on the parties' cross-motions for judgment upon the administrative record. Plaintiff, ECDC Environmental, initiated this pre-award bid protest action pursuant to 28 U.S.C. § 1491 (1994), *as amended by* Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, 3874–75 (1996). Plaintiff alleges that defendant, acting through the United States Department of the Army Corps of Engineers, New York District, improperly rejected plaintiff's bid as nonresponsive to the solicitation. Plaintiff therefore asks this court to order plaintiff's bid responsive and direct defendant to award the contract in accordance with the terms of the solicitation. Defendant maintains that it properly rejected plaintiff's bid and that defendant is entitled to judgment as a matter of law. Another offeror on the procurement, Great Lakes Dredge & Dock Co., has intervened in this matter on the side of defendant.

*Factual Background*

On March 4, 1997, defendant issued Solicitation No. DACW 51–97–B–0006 (the solicitation) for maintenance dredging and disposition of dredged materials, multiple channels project. Defendant conducted the solicitation pursuant to a two-step process, which included technical and price phases.

More specifically, step-one of the solicitation required offerors to submit technical proposals to defendant by April 25, 1997. Amendment No. 0001 to the solicitation attached a blank government standard form SF 1442 for offerors to complete and return as part of step-one of the procurement. Six offerors, including plaintiff and intervenor, submitted timely step-one technical proposals to defendant. As required by the solicitation, plaintiff submitted with its step-one technical proposal a completed SF 1442 (step-one SF 1442), which consisted of one double-sided page. Item 13A on the front-side of the step-one SF 1442 stated that "[s]ealed offers in original and 6 copies to perform the work required are due at the place specified in Item 8 by 5:00 pm (hour) local time 04/18/97 (date)."[1] Item 13D on the front-side of the step-one SF 1442 notified offerors that "[o]ffers providing less than 90 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected."[2] The back-side of plaintiff's step-one SF 1442 was signed by Mr. Timothy L. Dunlap, Director of Business Development for plaintiff. Defendant determined that plaintiff's technical proposal was responsive to the solicitation and acceptable to defendant. Plaintiff therefore proceeded to step-two of the procurement, as did Great Lakes Dredge & Dock Co. (intervenor) and a third offeror, Consolidated Technologies, Inc. (CTI).

On July 15, 1997, defendant issued Amendment No. 0002 (amendment 2) to the solicitation, which stated that step-two of the solicitation, sealed bid opening, would occur on August 15, 1997. In addition, amendment 2 attached a new SF 1442 to be used in the step-two bidding process (step-two SF 1442).[3]

---

1. Administrative Record (A.R.), tab 4, at 427.

2. *Id.*

3. Plaintiff asserts, and the administrative record confirms, that the step-two SF 1442 provided by defendant was copied as two pages rather than as a one-page, double-sided form. *Id.*, tab 1, at 8–9.

Item 13A on the front-side of the step-two SF 1442 indicated that "[s]ealed offers in original and 1 copies to perform the work required are due at the place specified in Item 8 by 11[:]00[am] (hour) local time on 08/15/97 (date)."[4] Item 13D on the front-side of the step-two SF 1442 notified offerors that "[o]ffers providing less than 90 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected."[5] On the backside of the step-two SF 1442, an offeror was to acknowledge receipt of amendments to the solicitation. The backside of the step-two SF 1442 also made reference to Item 13D, which established the minimum bid acceptance period as ninety days. Specifically, Item 17, on the backside of the step-two SF 1442 stated that:

> [t]he offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ___ calendar days after the date offers are due." (Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)[6]

Plaintiff submitted its step-two sealed bid to defendant on August 15, 1997. Also on that date, defendant opened the bids submitted by plaintiff, intervenor, and CTI. At bid opening, the apparent low bidder appeared to be plaintiff, with intervenor as the apparent second lowest bidder.[7] The parties stipulate that, at the time of bid opening, plaintiff's bid included a signed and executed back-side of the step-two SF 1442, but failed to include the front-side of the step-two SF 1442. Defendant said nothing about the omission at that time.

The executed back-side of plaintiff's step-two SF 1442 was signed by Mr. Kent W. Loest, plaintiff's Vice-President of Eastern Operations. With its step-two bid, plaintiff also included a complete, newly signed and executed step-one SF 1442.[8] The front-side of this step-one SF 1442, like plaintiff's previously submitted step-one SF 1442, directed a minimum bid acceptance period of ninety days from the submission of step-one proposals.

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*, on August 18, 1997, intervenor requested copies of the bids submitted by plaintiff and CTI. The following day, plaintiff made a similar request with regard to the bids of intervenor and CTI. On August 21, 1997, plaintiff and intervenor received the requested information.

In the meantime, on August 19, 1997, CTI had submitted an agency-level protest to defendant against the award of the contract to any offeror other than itself. In support of its protest, CTI argued that plaintiff did not possess a required permit and intervenor's bid was materially unbalanced.

By letter dated August 22, 1997, intervenor submitted an agency-level protest to defendant, arguing against the award of the contract to any other offeror. In the protest, intervenor asserted that plaintiff lacked the necessary permits to perform the work required by the solicitation. Shortly thereafter, on August 25, 1997, intervenor provided defendant with its response to CTI's protest.

On the same date, intervenor submitted an additional agency-level protest to defendant arguing against award of the contract to plaintiff. Intervenor based this protest upon the contention that plaintiff's bid was nonresponsive to the solicitation because it failed to provide the minimum bid acceptance period specified in the solicitation. More partic-

---

4. *Id.* at 8.

5. *Id.*

6. *Id.* at 9.

7. Plaintiff's bid was for $178,436,750, while the next lowest bid was for $185,902,000. *Id.*, tab 6, at 432.

8. Whereas the step-one SF 1442 included with plaintiff's step-one technical proposal was signed by Mr. Dunlap, the step-one SF 1442 submitted with plaintiff's step-two bid was signed by Mr. Loest.

ularly, intervenor argued that, because plaintiff submitted its step-two bid on a step-one SF 1442 rather than the step-two SF 1442, plaintiff did not commit to the minimum bid acceptance period required for step-two of the procurement.

Plaintiff responded to intervenor's agency-level protest by letter dated September 2, 1997. Plaintiff presented two primary arguments in opposition to the protest. First, plaintiff asserted that its failure to submit the front-side of the step-two SF 1442 did not render its bid nonresponsive because the inclusion of the executed back-side of the step-two SF 1442 reflected plaintiff's intention to be bound by the minimum bid acceptance period specified in Item 13D of the step-two SF 1442. Plaintiff further argued that its failure to include a complete step-two SF 1442 was merely a "minor clerical [photocopying] error" [9] that did not affect the validity of plaintiff's bid.

Plaintiff attempted to remedy the omission in its step-two bid by submitting to defendant a completed step-two SF 1442 on September 9, 1997. Concurrently, plaintiff requested that defendant: (1) sign an acknowledgement of its acceptance of the correction of plaintiff's bid; and (2) agree that the corrected step-two SF 1442 would be deemed a part of plaintiff's step-two bid submitted on August 15, 1997.

On September 12, 1997, intervenor repeated its agency-level protest regarding plaintiff's failure to include a complete step-two SF 1442 with its bid. Plaintiff responded with the same arguments previously made concerning intervenor's protest. At the same time, plaintiff and intervenor also addressed the matter of plaintiff's allegedly deficient permits.

On October 15, 1997, defendant's contracting officer (CO), Ms. Ella D. Snell, informed plaintiff that its bid was nonresponsive and would be rejected by defendant. The CO

indicated that her decision was based upon 48 C.F.R. § 14.301(a) (1997) (FAR 14.301), which requires that bids must comply in all material respects with the solicitation in order to be considered for award. According to the CO, plaintiff's bid did not comply in all material respects with the solicitation because the bid did not contain an unequivocal commitment that defendant had ninety days after bid opening to accept plaintiff's bid. The CO also explained that, because plaintiff submitted the back-side of the step-two SF 1442 with the front-side of the step-one SF 1442, it was reasonable to conclude that plaintiff did not commit to the required minimum bid acceptance period for step-two. Accordingly, defendant deemed plaintiff's bid nonresponsive to the solicitation.

At the same time it notified plaintiff of its decision, defendant also informed intervenor of its decision and requested that intervenor withdraw its agency-level protests concerning plaintiff and plaintiff's bid. On October 24, 1997, intervenor withdrew its protest submitted on August 25, 1997.[10]

On October 22, 1997, plaintiff filed its complaint in this court challenging defendant's determination that plaintiff's bid was nonresponsive.[11] In its complaint, plaintiff asks that this court declare plaintiff's bid to be responsive to the solicitation and direct defendant to award the contract in accordance with the terms of the solicitation.

Although plaintiff failed to file a motion requesting expedited consideration of its complaint, this court initiated a telephonic conference with the parties on October 30, 1997, in order to ascertain the status of this case. During the conference, defendant represented to this court that defendant was considering cancelling the solicitation. Consequently, this court held another telephonic conference with the parties on November 13, 1997, to again discuss the status of this case.

---

**9.** *Id.*, tab 15, at 701.

**10.** During oral argument before this court, defendant's counsel indicated that the remaining agency-level protests filed by CTI and intervenor, which concern responsibility, "are on-hold until [the responsiveness] issue is resolved by [this c]ourt." Transcript (Tr.) at 6.

**11.** Also on that date, plaintiff submitted a FOIA request to defendant, seeking an opportunity to review its bid. Defendant granted plaintiff's request.

At that time, defendant informed this court that the solicitation would proceed but that defendant would defer contract award until February 1, 1998, in order to allow this court time to decide plaintiff's complaint. Pursuant to the conference, defendant filed the administrative record with this court on November 24, 1997.[12] As further agreed upon during the conference, the parties have proceeded in this case with cross-motions for judgment upon the administrative record. This court heard oral argument on the parties' motions on January 20, 1998. Pursuant to a discussion held during oral argument, and subsequent confirmation by defendant's counsel, defendant has agreed not to make any award under this solicitation before February 3, 1998.

### Discussion

As previously noted, plaintiff alleges that defendant improperly rejected plaintiff's bid as nonresponsive to the solicitation. In response, defendant asserts that plaintiff's failure to timely submit a complete bid rendered plaintiff's bid submission ambiguous as to the minimum bid acceptance period. Defendant therefore maintains that its decision to reject plaintiff's bid as nonresponsive was proper, rational, and in accordance with applicable laws and regulations. Intervenor concurs with defendant.

### I. Judgment Upon the Administrative Record

Motions for judgment upon the administrative record are treated in accordance with the rules governing motions for summary judgment. RCFC 56.1; *see Clifton v. United States*, 31 Fed.Cl. 593, 596 (1994) (stating that, because the parties relied upon the administrative record, the motion under consideration implicated summary judgment), *aff'd without op.*, 66 F.3d 345 (Fed.Cir.1995). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106

S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of genuine issues of material fact, the burden then shifts to the non-moving party to show that a genuine factual dispute exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party shows an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

The court must resolve any doubts about factual issues in favor of the non-moving party, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985), to whom the benefits of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Further, in cases where the parties have submitted cross-motions for summary judgment, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *A Olympic Forwarder, Inc. v. United States*, 33 Fed.Cl. 514, 518 (1995) (citing *Corman v. United States*, 26 Cl.Ct. 1011, 1014 (1992)). This court applies these standards in considering the parties' cross-motions for judgment upon the administrative record.

### II. Declaratory Relief

■■■ Whenever defendant solicits bids, an implied-in-fact contract is created between defendant and the bidders on the underlying contract. *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 375 (1983). Un-

---

12. Defendant filed a corrected copy of the administrative record with the court on December 5, 1997.

der this implied-in-fact contract, the government guarantees that it will fully and fairly consider all bids submitted in accordance with the solicitation. *E.W. Bliss Co. v. United States,* 77 F.3d 445, 447 (Fed.Cir.1996); *see also Aero Corp. v. United States,* 38 Fed.Cl. 739, 748 (1997); *Cincom Sys., Inc. v. United States,* 37 Fed.Cl. 663, 671 (1997); *Ingersoll–Rand,* 2 Cl.Ct. at 375. "It is this implied contract which forms the jurisdictional basis for an exercise of this court's equitable authority." *Ingersoll–Rand,* 2 Cl. Ct. at 375; *see also Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233, 1237 (1970). Thus, the court's authority to grant relief is limited to determining whether the government breached its implied contract of fair dealing with the complaining bidder. *Aero,* 38 Fed.Cl. at 748; *see also Central Ark. Maintenance, Inc. v. United States,* 68 F.3d 1338, 1341–42 (Fed.Cir.1995); *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1373 (Fed.Cir.1983). To establish such a breach, the plaintiff bears the burden to show, by clear and convincing evidence, that no reasonable basis exists for the decision of defendant's procurement officials, or that the procurement process involved a clear and prejudicial violation of applicable statutes and regulations. *126 Northpoint Plaza Ltd. Partnership v. United States,* 34 Fed.Cl. 105, 107, *appeal dismissed,* 73 F.3d 379 (Fed.Cir. 1995); *see also Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974) (*Keco II* ); *CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 725 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988).

■ Because defendant's contracting officials may exercise broad discretion in making procurement decisions, the court's review of these officials' actions is limited. *CACI,* 13 Cl.Ct. at 725; *see also Electro–Methods, Inc. v. United States,* 7 Cl.Ct. 755, 762 (1985) (enunciating this standard); *cf. Shields Enters. v. United States,* 28 Fed.Cl. 615, 622 (1993) (noting that the court is to accord deference to agency procurement decisions). Indeed, the court should not intervene in the contract-award process unless it can determine that the decision at issue was irrational or unreasonable. *CACI,* 13 Cl.Ct. at 725; *see also Isometrics, Inc. v. United States,* 11 Cl.Ct. 346, 349 (1986); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983). In prior cases challenging contracting officers' responsiveness determinations, the court has held that "the ... nonresponsiveness determination will not be overturned ... unless no rational basis exists for the agency's decision." *Blount, Inc. v. United States,* 22 Cl. Ct. 221, 227 (1990). Conversely, it is clear that the court may "override the agency decision-making process when a disappointed bidder proves that an agency action was unreasonable." *GraphicData, LLC v. United States,* 37 Fed.Cl. 771, 782 (1997) (citing § 1491(b)).

In the present case, plaintiff asserts that the only issue before this court is "whether it was 'not in accordance with' law for [defendant] to reject [plaintiff's] bid because it was missing the front of the [s]tep-[t]wo SF 1442." [13] This court therefore must determine whether plaintiff has shown, by clear and convincing evidence, that defendant's nonresponsiveness determination lacks a reasonable basis and is not in accordance with applicable laws and regulations. This court addresses these questions together.

Significantly, the parties in the present case do not dispute that, at the time of bid opening, plaintiff's step-two bid did not include a complete step-two SF 1442. Rather, plaintiff's bid included only a signed and executed back-side of the step-two SF 1442, which was made a part of the solicitation by amendment 2. As previously noted, the front-side of the step-two SF 1442 stated the minimum bid acceptance period (ninety days) that offerors were required to hold their bids open for defendant's acceptance. Defendant maintains that plaintiff, in failing to include the front-side of the step-two SF 1442 and thereby omitting this material information, created an ambiguity as to the precise length of time to which plaintiff had committed to keep its bid open for defendant's acceptance.

---

13. Plaintiff's Memorandum of Law in Opposition to Government's and Intervenor's Motions for Summary Judgment Based on the Administrative Record, and in Support of Plaintiff's Motion for Summary Judgment at 1 (Pl.'s Mem.).

Defendant further argues that plaintiff created an even greater ambiguity by including with its step-two bid a newly signed and executed step-one SF 1442 specifying a different time-frame concerning the minimum bid acceptance period. In that regard, defendant argues that the inclusion of the step-one SF 1442 at this phase in the bidding process led the CO to reasonably conclude that the only time period to which plaintiff was committing itself was the span of time associated with the step-one phase of the procurement. According to defendant, the ambiguity created by the omission of the front-side of the step-two SF 1442, coupled with the inclusion of a step-one SF 1442, resulted in defendant's inability to ascertain whether plaintiff was unequivocally committed to keep its bid open for the time required in step-two of the bidding process. Defendant therefore maintains that the CO had a reasonable basis for rejecting plaintiff's bid as nonresponsive. In her decision, however, the CO made no reference to the fact that plaintiff submitted a signed and executed back-side of the step-one SF 1442. Rather, the CO concluded that plaintiff had failed to commit to the step-two bid acceptance period "[b]ased upon [plaintiff's] submission of the front[-]side of SF 1442 for [s]tep-[o]ne with the back[-]side of the SF 1442 for [s]tep-[t]wo." [14]

While acknowledging that its step-two bid submission did not include the front-side of the step-two SF 1442, plaintiff maintains that its bid nevertheless was responsive to the solicitation. In support of its position, plaintiff stresses the fact that it did submit with its step-two bid a signed and executed back-side of the step-two SF 1442, which referenced items contained on the front-side of the form. As such, plaintiff insists that its bid submission sufficiently bound plaintiff to comply with the material terms contained in the entire step-two SF 1442. In addition, plaintiff denies defendant's claim that plaintiff's step-two bid, as submitted, was ambiguous and thus required rejection by defendant. Instead, plaintiff argues that its failure to include the front-side of the step-two SF 1442 was a clerical mistake,

apparent on the face of plaintiff's bid, which defendant's contracting officer should have allowed plaintiff to correct. It is now left to this court to evaluate the relative merits of the parties' assertions.

■ Pursuant to the procurement regulations governing competitive sealed bid procurements, defendant must make award to the responsible bidder who submits the lowest responsive bid. 48 C.F.R. § 14.103-2 (1997). Defendant makes its bid responsiveness determinations "by reference to the bids when they are opened." *Toyo Menka Kaisha, Ltd. v. United States,* 220 Ct.Cl. 210, 597 F.2d 1371, 1377 (1979); *see also Honeywell, Inc. v. United States,* 870 F.2d 644, 648–49 (Fed.Cir.1989); *Firth Constr. Co. v. United States,* 36 Fed.Cl. 268, 274 (1996). Thus, "a bid that is non[ ]responsive on opening may not be made responsive by subsequent submissions or communications." *Firth,* 36 Fed. Cl. at 274.

To be deemed responsive, "a bid must comply in all material respects with the invitation for bids." FAR 14.301(a). Accordingly, defendant shall reject any bid that "fails to conform to the essential requirements of the invitation for bids." 48 C.F.R. § 14.404–2(a) (1997). Material or essential requirements are those terms that go to the substance of the bid. *See Firth,* 36 Fed.Cl. at 272. In a case similar to the case at bar, the court recently held that, "elements of the SF 1442, such as when performance will commence, when it will be completed, acknowledgement of the obligation to furnish bonds, and an agreement to hold the bid open for a specific period of time, are material [terms]." *Id.* at 273.

■ Moreover, the bid as submitted must obligate the offeror to perform exactly what is being called for in the solicitation. *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991) (quoting *Wright Assocs., Inc.,* 90–1 CPD ¶ 549 (June 12, 1990)). Stated differently, a bid submission must "obligate the bidder to perform in accordance with the material terms of the [invitation for bids]. There are two elements to the inquiry: a clear intent to be bound, and sufficient terms

---

**14.** A.R., tab 25, at 806.

so that acceptance of the offer forms a contract upon the basis of the [invitation for bids]." *Firth*, 36 Fed.Cl. at 273 (citations omitted). Here, as in *Firth*, the question presented is whether plaintiff's bid submission "contained sufficient terms so that [defendant's] acceptance of the bid, without more, would have formed a contract binding [plaintiff] to the terms stated in the [solicitation]." *Id.* To answer that broad question, this court also must query whether the step-two bid submitted by plaintiff incorporates by reference the missing material terms on the front-side of the step-two SF 1442. *See id.* at 274.

Relying upon *Firth*, defendant argues in the present case that plaintiff's bid, which was missing the front-side of the step-two SF 1442, lacked a material term. Specifically, defendant asserts that plaintiff's bid failed to identify the duration of the period set out in Item 13D to which plaintiff would commit to hold its bid open for defendant's acceptance. Absent this material element, defendant contends that plaintiff's commitment to the required minimum bid acceptance period was ambiguous and equivocal, and thereby failed to comply in all material respects with the solicitation. Accordingly, defendant maintains that it reasonably rejected plaintiff's bid as nonresponsive.

Plaintiff does not read the court's decision in *Firth* as compelling the result urged by defendant. Rather plaintiff insists that the court took care in *Firth* to "distinguish between the import of the front[-] and back[-side] of th[e SF 1442]." [15] More particularly, plaintiff contends that the court in *Firth* focused upon the importance of the *back-side* of the SF 1442 and the effect of its omission on the enforceability of the offeror's bid, and simply adverted to the factual situation involved here, *i.e.*, an offeror's failure to submit the *front-side* of an SF 1442.

In *Firth*, the court indicated that, although it was unclear from the facts presented whether the offeror had submitted any part of an SF 1442 with its bid, resolution of that question was unnecessary for the court's decision. *Id.* at 270. More precisely, the court determined that it could render its decision based upon the offeror's undisputed failure to submit the *back-side* of the SF 1442. *Id.* According to the court, "what was omitted, by the absence of a complete SF 1442, was [, among other things,] an agreement to hold the bid open for a certain period of time." *Id.* In the court's view, the absence of such an agreement and the lack of any incorporation of the missing material term into the offeror's bid, rendered the bid nonresponsive. *Id.* at 274, 276. The court stated in *Firth:*

> There is absolutely nothing in the amendment as returned by [the relevant offeror] to suggest an incorporation of the omitted terms, much less that [the relevant offeror] agreed to those terms.... At no place in [the relevant offeror's] bid package was there a [back-side] of an SF 1442. On the face of it, submission of the [front-side] does not constitute agreement to the terms of the [solicitation]. That act, by itself, was not an enforceable offer to contract.

*Id.* at 276.

■ Unlike the offeror in *Firth*, however, plaintiff in the present case did submit a signed and executed back-side of the step-two SF 1442. Here, what plaintiff did not submit was the front-side of the step-two SF 1442. Nevertheless, plaintiff asserts that the terms contained on the front-side of the step-two SF 1442 were incorporated by reference into its bid through plaintiff's submission of the signed and executed back-side of the form, which refers to items included on the front-side of the form. As such, plaintiff argues that its bid was sufficient to bind plaintiff to all of the terms of the SF 1442, including those terms found on the front-side of the form. This court agrees.

In explaining the basis for its assent, this court initially notes an important difference between the terms found on the front-side of an SF 1442 and those included on the back-side of the form. Namely, the material elements contained on the front-side of the SF 1442 are inserted by defendant, while the material terms on the back-side of the form must be filled in by the offeror. It is axiomatic that, because defendant itself inserted

---

**15.** Pl.'s Mem. at 12.

the material terms on the front-side of the step-two SF 1442, defendant was aware of those terms. Moreover, plaintiff's assent to those terms properly may be inferred from the signed and executed back-side of the step-two SF 1442.

In fact, the court in *Firth* noted a distinction between what may be inferred from the back-side of an SF 1442 and what may be inferred from the front-side of the form. Specifically, in discussing items 13D and 17 of the SF 1442, the court indicated that, "[a]lthough a default period ... is included [in item 13D on the front-side of the form], agreement to the default cannot be inferred from [the front-side], only from [the back-side]." *Id.* at 274, n. 8. This court reads the quoted language from *Firth* to mean that, where the offeror does not insert a contradictory minimum bid acceptance period in item 17 on the back-side of the SF 1442, the offeror's agreement to be bound by the default period included by defendant in item 13D on the front-side may be inferred from the offeror's submission of a signed and executed back-side of the form.

Importantly, plaintiff in the present case does not insert any alternative minimum bid acceptance period in item 17 on the back-side of the step-two SF 1442.[16] Accordingly, this court determines that plaintiff's agreement to the ninety-day default period contained in item 13D on the front-side of the step-two SF 1442 provided by defendant may be inferred from plaintiff's inclusion of the signed and executed back-side of the step-two SF 1442 with its bid. This conclusion is especially warranted in light of the fact that defendant itself inserted the ninety-day minimum bid acceptance period in item 13D on the

front-side of the step-two SF 1442 and therefore was fully aware of the duration of the default period. Thus, plaintiff's step-two bid "contained sufficient terms so that [defendant's] acceptance of the bid, without more, would have formed a contract binding [plaintiff] to the terms stated in the [solicitation]." *Id.* at 273.

Moreover, printed on the back-side of the step-two SF 1442 submitted by plaintiff in the present case is the language: "STANDARD FORM 1442 *BACK*."[17] Thus, the back-side of the step-two SF 1442 submitted by plaintiff clearly identified the complete form as consisting of both a front- and back-side. It is clear to this court that the items contained on the front-side of the step-two SF 1442 were incorporated by specific reference on the back-side of the form, which was signed and executed by plaintiff. *See E. Gornell & Sons, Inc.,* B–170044, 1970 WL 4234, at *2 (C.G., Oct. 15, 1970) (finding a bid responsive despite the fact that the bid omitted pages containing material terms, because the bid identified the complete solicitation to which it responded and incorporated by reference the missing material terms). Indeed, by not inserting any number in Item 17 on the back-side of the form, plaintiff unequivocally accepted the default minimum bid acceptance period stated in Item 13D on the front-side of the form, which was incorporated by reference into plaintiff's bid. Accordingly, plaintiff's bid, and more particularly the signed and executed back-side of the step-two SF 1442, evidences plaintiff's intention to be bound by all of the substantive terms and conditions of the entire step-two SF 1442.[18] This court therefore concludes

---

**16.** This detail also distinguishes the case at bar from the facts of the *Blount* case previously decided by this court. Specifically, plaintiff here simply inadvertently omitted a page from its step-two bid submission. By contrast, the plaintiff in *Blount* took exception to a solicitation requirement in its bid, thereby rendering the bid nonresponsive. *Blount,* 22 Cl.Ct. at 230.

**17.** A.R., tab 8, at 449 (emphasis added).

**18.** The court also notes that plaintiff included with its bid a signed SF 30, acknowledging plaintiff's receipt of amendment 2. *Id.* at 457. The signed SF 30 included with plaintiff's bid further

noted that it was the first of five pages, thereby indicating that plaintiff had received all five pages of amendment two, including both the front- and back-side of the step-two SF 1442. *See id.* This acknowledgment refutes the contention raised by intervenor at oral argument that there is no way to know if plaintiff had the terms of the front-side of the step-two SF 1442 in mind when the back-side of the form was signed, or even if the back-side of the SF 1442 submitted by plaintiff actually was the step-two SF 1442 or instead was some other SF 1442 from some other procurement. Tr. at 28–33. Intervenor's second point is further rebutted by defendant itself. In particular, defendant expressly acknowledges that plaintiff's bid "included the sec-

that plaintiff unequivocally committed itself to the ninety-day minimum bid acceptance period. The CO's decision to the contrary is unreasonable.

Defendant further asserts that plaintiff's failure to include the front-side of the step-two SF 1442 created an ambiguity as to the precise length of time to which plaintiff had committed to keep its bid open for defendant's acceptance. In addition, defendant contends that plaintiff exacerbated the ambiguity in its bid by including with its step-two bid a newly signed and executed step-one SF 1442, which led the CO to reasonably conclude that the only bid acceptance period to which plaintiff was committing was the period associated with step-one of the procurement. In her decision finding plaintiff's bid nonresponsive, however, the CO stated: "[b]ased upon [plaintiff's] submission of the *front[-]side of SF 1442 for [s]tep-[o]ne with the back[-]side of the SF 1442 for [s]tep-[t]wo,* it is reasonable to conclude that [plaintiff] did not commit to the required bid acceptance period."[19] The situation described by the CO as forming the basis for her decision, however, is not the same as the circumstances presented in the record before this court. Importantly, nowhere in her decision does the CO recognize that plaintiff's step-two bid submission also included a signed and executed back-side of the step-one SF 1442. This court cannot assume that this fact was considered by the CO. Instead, this court must determine the reasonableness of the CO's decision based solely upon the information contained in that decision. Based upon the sparse contents of the CO's decision, this court concludes that no reasonable basis exists for the CO's findings that plaintiff failed to commit to the required bid acceptance period and that plaintiff's bid was ambiguous.

Here, the inclusion of a complete, front- and back-sided, step-one SF 1442, albeit superfluous to plaintiff's step-two bid submission, reasonably should not have created any ambiguity in the mind of the CO, even though only the back-side of the step-two SF 1442 was included with the bid. Rationally, it should have been apparent to the CO that the front- and back-sides of the step-one SF 1442 belonged together and that the back-side of the step-two SF 1442 stood alone. It must be emphasized that the step-one SF 1442 was a *complete* form. As such, it was unreasonable for the CO to conclude that plaintiff did not commit to the required bid acceptance period for step-two based solely upon her incomplete, perhaps even erroneous, observation that plaintiff had submitted the front-side of the step-one SF 1442 with the back-side of the step-two SF 1442, with no mention of the fact that plaintiff also had submitted the back-side of the step-one SF 1442.

This court's determination that plaintiff's step-two bid was unambiguous is not affected by the fact that plaintiff's step-two bid failed to include the front-side of the step-two SF 1442. As this court already has concluded, the terms on the front-side of the step-two SF 1442 were incorporated by reference through plaintiff's inclusion of the signed and executed back-side of the form. Significantly, plaintiff's agreement to the default minimum bid acceptance period provided by defendant on the front-side of the step-two SF 1442 could be inferred from the back-side of the form. Thus, plaintiff's bid was responsive to the solicitation and the default period was unequivocal.

Furthermore, the minimum bid acceptance period included on the front-side of the step-one SF 1442 expired approximately one month prior to the date of submission of plaintiff's step-two bid. Reading plaintiff's bid as the CO's decision implies one must, the only conclusion must be that plaintiff's bid committed plaintiff to keep its bid open only until the *already-expired* date contained on the front-side of the step-one SF 1442. This court concurs with plaintiff that the construction of its bid advocated by defen-

---

ond page [back-side] of the *[s]tep-[t]wo* SF 1442." Defendant's Statement of Facts ¶ 14. The CO's decision also shows that defendant did not question the origin of the signed back-side of plaintiff's SF 1442 prior to the present litigation. A.R., tab 25, at 806 (stating that plaintiff "sub-

mitted the back[-]side of the SF 1442 for [s]tep-[t]wo"). Consequently, this court will not engage in any conjecture as to the origin of the form submitted by plaintiff.

19. A.R., tab 25, at 806 (emphasis added).

dant would create an absurd result and therefore is unreasonable. In such circumstances, there can be no ambiguity.

■ Determining that plaintiff's bid is responsive, this court further decides that plaintiff should have been allowed to correct the mistake in its bid pursuant to the mistake-in-bid procedures set out in 48 C.F.R. § 14.407 (1997) (FAR 14.407). *Arguendo*, to the extent that plaintiff's bid contained an apparent mistake, the CO should have sought verification of plaintiff's bid in accordance with FAR 14.407–1, which provides that a contracting officer shall examine all bids after opening for mistakes and shall seek verification of an offeror's bid in cases of apparent mistakes or where the contracting officer has reason to believe a mistake may have been made. *Id.* In light of the severity of the effect caused to plaintiff by defendant's failure to verify plaintiff's bid, this court determines that the CO's actions constituted a "clear and prejudicial violation of applicable ... regulations." *DeMat Air, Inc. v. United States,* 2 Cl.Ct. 197, 202 (1983). Furthermore, the violation was sufficient to deny plaintiff "the impartial consideration to which it was entitled under the implied contract obligations of the government." *Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 714 (1985).

Further assuming, *arguendo,* the existence of an apparent clerical mistake, the CO also at least should have considered allowing the corrective action sought by plaintiff, *i.e.,* the CO should have considered allowing plaintiff to submit a complete step-two SF 1442. Such action would have been consistent with the procedures set out in FAR 14.407–2.

It appears from the facts presented, however, that defendant did not question the responsiveness of plaintiff's bid due to the omitted front-side of the step-two SF 1442 until after intervenor filed its protest challenging the responsiveness of plaintiff's bid for the aforementioned reason. This court therefore determines that the mistake in plaintiff's bid was not apparent and was an "other mistake disclosed before award." The CO therefore should have allowed correction of plaintiff's responsive bid under FAR 14.407–3. In that regard, this court also notes that plaintiff has established both the existence of the mistake and the bid actually intended by clear and convincing evidence, as required by FAR 14.407–3.

## Conclusion

Based upon the foregoing discussion, this court concludes that plaintiff has demonstrated, by clear and convincing evidence, that defendant acted unreasonably and not in accordance with applicable law and regulations in finding plaintiff's bid nonresponsive to the solicitation. Accordingly, plaintiff's cross-motion for summary judgment upon the administrative record is granted and defendant's motion for summary judgment upon the administrative record is denied. The Clerk is directed to enter judgment in favor of plaintiff, declaring plaintiff's bid to be responsive and ordering defendant to proceed with contract award under the terms of Solicitation No. DACW 51–97–B–0006. No costs.